## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE BRITO, on behalf of himself and others similarly situated, | Civil Case No.: 19-cv-00828 |
| Plaintiff, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MARINA'S BAKERY CORP., MARGARITO GONZALEZ and SERGIO GONZALEZ, in their individual and professional capacities, | |
| Defendants. | |

Plaintiff Jose Brito (collectively, "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Faruqi & Faruqi, LLP and the Community Development Project at the Urban Justice Center, hereby alleges as follows against Defendants Marina's Bakery Corp. ("Marina's Bakery"), Margarito Gonzalez ("Margarito"), and Sergio Gonzalez ("Sergio") (collectively, "Defendants"):

## NATURE OF THE CLAIMS

1.      Defendants own and operate two restaurants and bakeries in Staten Island, New York, both named "Marina's Bakery" (together, the "Restaurants").

2.      Defendants engage in a common and deliberate policy of consistently compensating Plaintiff and other similarly situated Restaurant Employees at rates that are drastically below the applicable State minimum wage, and **never** paying them overtime compensation or spread of hours pay.

3.      Defendants also routinely fail to pay the Restaurant Employees on their regularly scheduled pay days, instead at times paying them several weeks after their wages are due.

4.      Additionally, Defendants have never furnished their Restaurant Employees with

any Notices of Pay Rate, notices of tip credit, or accurate wage statements as required by law.

5.      Defendants have also discriminated and retaliated against Mr. Brito individually by subjecting to him to a hostile work environment based on his disabilities and firing him immediately after he complained to Defendants about their common unlawful wage practices.

6.      Plaintiff's claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of himself and all other similarly situated Restaurant Employees (defined *infra* at ¶ 37) employed by Defendants at any time during the full statute of limitations period.

7.      Plaintiff's claims are also brought, in part, under the New York Labor Law ("NYLL"), and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself and all other similarly situated Restaurant Employees (defined *infra* at ¶ 37) employed by Defendants at any time during the full statute of limitations period.

8.      Plaintiff also brings claims individually under the FLSA, NYLL, New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and New York City Human Rights Law, §§ 8-101, *et seq.* ("NYCHRL"), and applicable regulations thereunder.

## JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

10.      The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and City law pursuant to 28 U.S.C. § 1367.

11.      Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of

business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

## ADMINISTRATIVE PREREQUISITES

12.      On or around January 17, 2019, Mr. Brito filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq*. (the "ADA").

13.      Within 90 days of receiving a Notice of Right to Sue from the EEOC, Plaintiff will seek leave of the Court to amend their Complaint to add, *inter alia*, a cause of action for violations of the ADA on behalf of Mr. Brito.

14.      Any and all other prerequisites to the filing of this action have been met.

## PARTIES

A.      **Plaintiff Jose Brito**

15.       Plaintiff Jose Brito is a resident of New York City and was employed by Defendants from on or around May 5, 2017 through on or around April 7, 2018.

16.      At all relevant times, Jose Brito was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

B.      **Defendant Marina's Bakery Corp.**

17.      Defendant Marina's Bakery Corp. is a domestic business corporation with its principal place of business located at Staten Island, New York.

18.      Marina's Bakery Corp. owns and operates two restaurants, both named "Marina's Bakery," located at 598 Richmond Road, Staten Island, New York 10304 and 1255 Castleton Avenue, Staten Island, New York 10310.

19.     At all relevant times, Marina's Bakery Corp. was an "employer" within the meaning of all applicable statutes and regulations.

20.     Upon information and belief, during the entire relevant time period, Defendants have engaged in interstate commerce and have revenues in excess of $500,000 per year.

**C.**     **Defendant Margarito Gonzalez**

21.     Defendant Margarito Gonzalez is the owner of Defendant Marina's Bakery Corp. and a resident of the State of New York.

22.     At all relevant times, Margarito Gonzalez controlled and directed the terms of employment and compensation of Plaintiff and all similarly situated persons.

23.     At all relevant times, Margarito Gonzalez maintained and exercised his power to hire, fire, discipline, and promote Plaintiff and all similarly situated persons.

24.     At all relevant times, Margarito Gonzalez maintained control, oversight, and direction of Plaintiff and all similarly situated persons, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

25.     At all relevant times, Margarito Gonzalez was an "employer" within the meaning of all applicable statutes and regulations.

**D.**     **Defendant Sergio Gonzalez**

26.     Defendant Sergio Gonzalez is a manager at Marina's Bakery and a resident of the State of New York.

27.     At all relevant times, Sergio Gonzalez controlled and directed the terms of employment and compensation of Plaintiff and all similarly situated persons.

28.     At all relevant times, Sergio Gonzalez maintained and exercised his power to hire, fire, discipline, and promote Plaintiff and all similarly situated persons.

29.     At all relevant times, Sergio Gonzalez maintained control, oversight, and direction of Plaintiff and all similarly situated persons, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

30.     At all relevant times, Sergio Gonzalez was an "employer" within the meaning of all applicable statutes and regulations.

## FACTS

### A.     Background

31.     Defendants own and operate two Mexican restaurants and bakeries in Staten Island, New York, both named "Marina's Bakery."

32.     Marina's Bakery serves food to customers and also delivers its food to stores and restaurants throughout New York and New Jersey.

33.     Upon information and belief, between both locations of Marina's Bakery, Defendants employ a staff of approximately 30 to 40 employees at any given time.

34.     Employees of Marina's Bakery hold various titles, including, *inter alia*: (i) Cook; (ii) Assistant Cook; (iii) Baker; (iv) Helper; (v) Packer; (vi) Delivery Worker; (vii) Server; (viii) Busser; (ix) Cashier; and (x) Host (collectively, "Restaurant Employees").

35.     The Restaurant Employees typically work an average of 60 to 80 hours per week.

### B.     Failure to Pay Minimum, Overtime and Spread of Hours Wages

36.     Defendants engage in a common pattern and practice of deliberately denying Restaurant Employees minimum and overtime wages owed.

37. Defendants systematically deny Restaurant Employees wages in several ways.

38. First, Defendants pay all Restaurant Employees at rates that are drastically below the applicable State minimum wage.

39. This common unlawful compensation scheme is communicated to Restaurant Employees and carried out by Margarito and Sergio directly.

40. Defendants' practice results in Restaurant Employees being paid well below the applicable State minimum wage for an average of 60 to 80 hours per week.

41. Second, Defendants *never* pay any of their Restaurant Employees at a rate of one and one-half times the applicable State minimum wage rates for any of their hours worked in excess of 40 hours in a workweek.

42. In other words, Defendants completely deny all Restaurant Employees, some who work over 90 hours per week, any overtime compensation *at all*.

43. Third, Defendants do not provide any of their Restaurant Employees with "spread of hours pay," i.e., an additional hour of pay at the applicable State minimum wage rate on each day where the length of interval between the beginning and end of a Restaurant Employees' work day exceeds 10 hours.

**C.      Late Payment of Wages**

44. Defendants have established a weekly pay period, spanning Monday to Sunday, and have designated the regularly scheduled pay day to be the following Monday of every week.

45. Defendants do not offer to mail wages to Restaurant Employees and do not pay them via direct deposit.

46. Instead, Restaurant Employees are required to pick up their wages at the Restaurants.

47.     However, Defendants routinely fail to make Restaurant Employees' wages available, at times until approximately 2 to 3 weeks after their regularly scheduled pay day.

48.     Restaurant Employees often arrive to the Restaurant to collect their wages, only to learn that their wages are not available, and they have to return several days or weeks later to finally receive them.

**D.     Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

49.     The NYLL requires that Defendants provide the Restaurant Employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer [ ];  the name of the employer;  any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

50.     Throughout, the statutory period, Defendants have never provided any of the Restaurant Employees with a Notice of Pay Rate.

51.     The NYLL also requires that Defendants furnish the Restaurant Employees with accurate wage statements with each payment of wages.

52.     Throughout the statutory period, Defendants have never furnished any wage statements at all to any of the Restaurant Employees.

53.     Defendants have never furnished any of the Restaurant Employees with any notices of tip credit.

E.    **Plaintiff Jose Brito**

    i.    **Background**

54.    Jose Brito worked at Marina's Bakery as a Helper and Baker from approximately May 5, 2017 through April 7, 2018.

55.    Some of Mr. Brito's duties as both a Helper and Baker included the following: cleaning the bakery and the bathrooms; fetching supplies to restock the bakery; cleaning the approximately 400 bread trays required to make the bread throughout each shift; molding and shaping the bread; organizing the bread on the trays; lathering the bread with eggs, butter, and other ingredients; loading and unloading bread trays from and into delivery trucks; placing the bread in the oven; and taking the bread out of the oven.

56.    Throughout his employment at Defendants, Mr. Brito generally worked Monday through Saturday from approximately 7:00 a.m. until approximately 10:00 p.m.

57.    Mr. Brito generally worked approximately 60 to 90 hours per week, for an average of approximately 75 hours per week.

    ii.    **Wage Violations**

58.     At the outset of Mr. Brito's employment at Marina's Bakery, Margarito and Sergio informed Mr. Brito that Defendants would pay him only $80 per day.

59.    This resulted in Mr. Brito being paid well below the applicable State minimum wage rate for as many as 91.67 hours in a given week.

60.    Further, Mr. Brito was *never* paid one and one-half times the applicable State minimum wage rate for any hours worked in excess of 40 hours in a workweek.

61.    Mr. Brito worked more than 10 hours in a single day approximately six days per week; however, Defendants *never* paid Mr. Brito "spread of hours" pay.

62.     By way of example, from May 14, 2017 to May 20, 2017, Mr. Brito worked one 15-hour shift, two 14-hour shifts, two 14.5-hour shifts and one 13.5-hour shift, for a total of 85.5 hours.

63.     Defendants paid Mr. Brito a total of only $480 for these 85.5 hours of work, amounting to only **$5.61** per hour (considerably below the applicable State minimum wage rate), and absolutely no overtime compensation at all.

64.     Mr. Brito was not paid any spread of hours pay for the six shifts that he worked which exceeded 10 hours in length.

65.     On or around October 7, 2017, Defendants Margarito and Sergio gave Mr. Brito a raise to $100 per day.

66.     Despite the increased compensation, Defendants continued to deny Mr. Brito compensation at or above the applicable State minimum wage rate.

67.     Defendants similarly continued their common policy and scheme to never pay Mr. Brito any overtime compensation for his hours worked in excess of 40 hours in a workweek.

68.     Moreover, Defendants continued to withhold "spread of hours" pay, despite Mr. Brito working more than 10 hours per day, six days per week.

69.     By way of example, from December 24, 2017 to December 30, 2017, Mr. Brito worked two shifts of 15 hours, three shifts of 15 hours and thirty minutes, and one shift of 15 hours and 10 minutes, for a total of 91 hours and 40 minutes (91.67 hours).

70.     Defendants paid Mr. Brito a total of only $600 for these 91.67 hours of work, amounting to only **$6.54** per hour (considerably below the applicable State minimum wage rate), and absolutely no overtime compensation at all.

71.     Mr. Brito was not paid any spread of hours pay for the six shifts that he worked

which exceeded 10 hours in length.

72.     Defendants never offered to mail Mr. Brito his wages or allowed him to be paid via direct deposit.

73.     Instead, Mr. Brito was always required to pick up his wages at the Restaurant.

74.     Throughout the statutory period, Defendants' established a weekly pay period spanning Monday to Sunday, and designated Mr. Brito's regular pay day to be the following Monday of every week.

75.     However, Defendants routinely failed to make Mr. Brito's wages available until several days after his regularly scheduled pay day.

76.     Defendants never provided Mr. Brito with a Notice of Pay Rate.

77.     Defendants never provided Mr. Brito with accurate wage statements.

78.     In fact, Mr. Brito was not provided with any wage statements at all.

79.     Mr. Brito had numerous conversations with other Restaurant Employees throughout the relevant time period, and they have confirmed that Defendants have never furnished a Notice of Pay Rate, notices of tip credit, or wage statements to any of the Restaurant Employees.

80.     Through his conversations with other Restaurant Employees, Mr. Brito has learned that other Restaurant Employees were paid in a similar manner as Mr. Brito.

81.     Moreover, on occasion, Mr. Brito personally watched Margarito and Sergio paying other Restaurant Employees and saw that they were paid in the same manner as he was.

**iii.     Disability Discrimination and FLSA/NYLL Retaliation**

82.     Prior to working at Marina's Bakery, Mr. Brito sustained an injury which left him permanently blind in his right eye.

83.     Mr. Brito also has a genetic condition which requires him to wear a hearing aid in order to hear in his right ear.

84.     As a result of his eye related disability, Mr. Brito suffers increased temperature sensitivity in his right eye, requiring him to take additional steps to ensure that his eye is protected.

85.     Early on in his employment, Mr. Brito informed Margarito and Sergio of his disabilities and requested a reasonable accommodation to protect his impaired eye.

86.     Specifically, Mr. Brito requested that Defendants provide him with protective goggles to wear while placing the bread into, and taking the bread out of, the oven.

87.     Mr. Brito explained that the hot temperature of the oven causes severe pain to his disabled eye.

88.     These protective goggles cost approximately $80 to $100 dollars and Mr. Brito could not afford to buy them himself.

89.     Defendants refused to provide any protective gear for Mr. Brito.

90.     Mr. Brito also asked Margarito and Sergio if he can be relieved from the two tasks that required the oven, namely loading and unloading the bread from the oven.

91.     Indeed, there are approximately six Helpers and Bakers that work at any given time and, as detailed *supra* in paragraph 58, the two oven-related tasks are only a small portion of Mr. Brito's duties that could have been performed by someone else.

92.     Nevertheless, Defendants refused Mr. Brito's request and likewise refused to engage in any interactive process with Mr. Brito regarding the provision of an alternative reasonable accommodation.

93.     Left without options, Mr. Brito purchased sunglasses for approximately $15 and wore them throughout the remainder of his employment.

94.     These glasses did little to alleviate the pain Mr. Brito suffered every time he was forced to perform oven-related tasks.

95.     In addition to unlawfully denying Mr. Brito a reasonable accommodation, Defendants fostered a work environment in which Mr. Brito was subjected to constant harassment and discriminatory comments regarding his disabilities.

96.     Throughout Mr. Brito's employment, Mr. Brito worked alongside other Bakers and Helpers and was consistently a strong performer.

97.     However, Margarito and Sergio scrutinized Mr. Brito's performance far more closely than that of other Bakers and Helpers.

98.     On multiple occasions when Margarito and Sergio monitored Mr. Brito, they loudly and publicly disparaged Mr. Brito's performance in front of other Restaurant Employees, questioning his ability to perform his duties because he was "blind and deaf."

99.     Defendants did not engage in such bullying supervisory tactics with other Bakers or Helpers that did not suffer from disabilities.

100.     Defendants had no legitimate, non-discriminatory reason for subjecting Mr. Brito to heightened scrutiny.

101.     Indeed, Defendants' practice of monitoring Mr. Brito was motivated solely by discriminatory animus.

102.     This hostile work environment persisted throughout Mr. Brito's employment with Defendants.

103.     Over the last several months of his employment, the hostility towards Mr. Brito escalated and ultimately became unbearable.

104.     Margarito and Sergio openly taunted and laughed at Mr. Brito for wearing a hearing

aid and having a visual impairment.

105.    On several occasions, Margarito and Sergio would maliciously shout into Mr. Brito's ear, as a way to make fun of his hearing impairment.

106.    On other occasions, Margarito and Sergio would direct verbal taunts at Mr. Brito and then claim Mr. Brito would never do anything about it because no other employer would ever hire him because of his disabilities.

107.    Needless to say, Defendants' comments and actions were malicious and evinced a strong discriminatory animus towards Mr. Brito.

108.    On April 7, 2018, Sergio again taunted Mr. Brito and stated that because of his "deficiencies," namely his disabilities, no one else would ever hire him.

109.    During this same conversation, Mr. Brito complained to Sergio regarding the Defendants' unlawful wage practices of paying him at rates that are considerably below the minimum wage and not paying him overtime.

110.    Immediately following Mr. Brito's protected complaint regarding Defendants' wage practices – in the very same conversation – Sergio informed Mr. Brito that he was no longer needed at the Restaurant, thereby terminating Mr. Brito's employment.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

111.    Plaintiff brings this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

112.    Plaintiff seeks to maintain claims, pursuant to FLSA § 216(b), on behalf of himself and all other Restaurant Employees who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

113.    At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had

substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of: (i) failing to compensate Plaintiff and the FLSA Collective at one and one-half times their regular rate of pay (or the federal minimum wage) for all hours worked in excess of 40 hours in a workweek; and (ii) failing to timely pay wages owed.

114.     Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

115.     Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

116.     As a result of Defendants' conduct, they are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

117.     While the exact number of the FLSA Collective is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 80 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

118.     Plaintiff is currently unaware of the identities of the members of the FLSA Collective.

119.     Accordingly, Defendants should be required to provide Plaintiff with a list of all persons employed by Defendants during the full statute of limitations period, along with their last

known addresses, telephone numbers, and email addresses, so Plaintiff can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

120.    Plaintiff brings this action, in part, as a class action under the NYLL and applicable regulations thereunder.

**A.**    **Class Definition**

121.    Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and a class of all other Restaurant Employees who have been employed by Defendants as Cooks, Assistant Cooks, Bakers, Helpers, Packers, Delivery Workers, Servers, Bussers, Cashiers, and Hosts, during the full statute of limitations period (the "NYLL Class").

122.    Plaintiff alleges, on behalf of himself and the NYLL Class, that Defendants violated, *inter alia*, the NYLL by: (i) failing to compensate Plaintiff and the NYLL Class at the applicable State minimum wage for all hours worked under 40 hours in a workweek; (ii) failing to compensate Plaintiff and the NYLL Class at one and one-half times their regular rate of pay (or the applicable State minimum wage) for all hours worked in excess of 40 hours in a workweek; (iii) failing to compensate Plaintiff and the NYLL Class spread of hours pay for all shifts that exceeded 10 hours in a day; (iv) failing to timely pay wages owed; (v) failing to provide Notices of Pay Rate; and (vi) failing to furnish accurate wage statements.

123.    Plaintiff and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

124.    The wage practices described in this Complaint are part of Defendants' normal course of conduct.

125.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.    Requirements of Rule 23(a)**

**i.    Numerosity and Impracticability of Joinder**

126.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

127.    While the exact number of the members of the NYLL Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 120 members of the NYLL Class.

128.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.    Common Questions of Law and Fact**

129.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

130.    Indeed, there are few, purely individual issues in this action.

131.    The questions of law and fact that are common to Plaintiff and the NYLL Class include, but are not limited to:

(a)    Whether Plaintiff and the NYLL Class worked over 40 hours per week;

(b)    Whether Defendants failed to pay Plaintiff and the NYLL Class all minimum wages owed to them;

(c)    Whether Defendants failed to pay Plaintiff and the NYLL Class all overtime compensation owed to them;

(d)     Whether Defendants failed to pay Plaintiff and the NYLL all wages on days where their shifts exceeded 10 hours;

(e)     Whether Defendants failed to timely pay Plaintiff and the NYLL their wages owed;

(f)     Whether Defendants failed to provide Plaintiff and the NYLL Class with Notices of Pay Rate;

(g)     Whether Defendants failed to furnish accurate wage statements to Plaintiff and the NYLL Class; and

(h)     Whether Plaintiff and the NYLL Class are entitled to liquidated damages and injunctive relief.

132.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**iii.     Typicality of Claims and Relief Sought**

133.    Plaintiff's claims are typical of the claims of the members of the NYLL Class they seek to represent.

134.    Plaintiff and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

135.    The wage practices suffered by Plaintiff, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their Restaurant Employees generally, and of the NYLL Class specifically.

136.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**iv.     Adequacy of Representation**

137.    Plaintiff will fairly and adequately protect the interests of the NYLL Class because his interests are coextensive and aligned with those of the members of the NYLL Class.

138.    Plaintiff has no interests adverse to the NYLL Class he seeks to represent and have retained competent and experienced counsel.

139.    Plaintiff is willing and able to represent the NYLL Class as fairly and vigorously as he pursues his similar individual claims.

140.    Plaintiff has retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

141.    The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**C.     Requirements of Rule 23(b)(1)**

142.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

143.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the NYLL Class, and Defendants.

144.    By filing this Complaint, Plaintiff is preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

145.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

**D.     Requirements of Rule 23(b)(2)**

146.    Defendants acted on grounds, described herein, generally applicable to Plaintiff and

the NYLL Class by denying Plaintiff and the NYLL Class minimum and overtime wages, failing to pay wages on time, failing to pay spread of hours compensation, and failing to furnish Notice of Pay Rate and accurate wage statements.

147.     These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the NYLL Class as a whole.

148.     Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum and overtime wages, spread of hours compensation, timely payment of wages, Notices of Pay Rate and accurate wage statements.

149.     Declaratory and injunctive relief are the factual and legal predicates for Plaintiff and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

150.     Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**E.     Requirements of Rule 23(b)(3)**

151.     The common issues of fact and law affecting Plaintiff's claims and those of the NYLL Class – including, without limitation, the common issues identified in the paragraphs above – predominate over issues affecting only individual claims.

152.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the NYLL Class.

153.     The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

154.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Restaurant Employees during the statutory period), as well as the common questions of law and fact described herein.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME
### (*On Behalf of the FLSA Collective*)

155.    Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

156.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

157.    The FLSA requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than one and one-half times their regular rate of pay and at a rate not less than one and one-half times the federal minimum wage for all hours worked in excess of 40 hours in a workweek.

158.    Plaintiff and the FLSA Collective were not exempt from the requirement that Defendants pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

159.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

160.    As a result of Defendants' failure to compensate Plaintiff and the FLSA Collective at a rate not less one and one-half times their regular rate of pay for all hours worked in excess of

40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

161.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

162.    Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**
**(*On Behalf of the FLSA Collective*)**

163.    Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

164.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

165.    The FLSA requires covered employers, including Defendants, to pay Restaurant Employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

166.    Plaintiff and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

167.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

168.    As a result of Defendants' failure to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

169.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

170.    Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**
***(On Behalf of the NYLL Class)***

171.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

172.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

173.    The NYLL requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

174.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

175.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

176.    As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a

workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

177.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

178.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME WAGES**
(***On Behalf of the NYLL Class***)

179.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

180.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

181.    The NYLL requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek and at a rate not less than one and one-half times the applicable State minimum wage for all hours worked in excess of 40 hours in a workweek.

182.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

183.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than

one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

184.     As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

185.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

186.     Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES
#### (*On Behalf of the NYLL Class*)

187.     Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

188.     During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

189.     The NYLL requires covered employers, including Defendants, to pay Restaurant Employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

190.     Plaintiff and the NYLL Class were not exempt from the requirement that Defendants timely pay them their wages.

191.     Throughout the full statute of limitations period, Defendants have engaged in a

policy and practice of failing to pay Plaintiff and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

192.    As a result of Defendants' failure to pay Plaintiff and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

193.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

194.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PROVIDE NOTICES OF PAY RATE
### (*On Behalf of the NYLL Class*)

195.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

196.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

197.    The NYLL requires covered employers, including Defendants, to provide Restaurant Employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer [ ];  the name of the employer;  any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the

telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

198.   Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

199.   Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiff and the NYLL Class.

200.   As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

201.   Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiff and the NYLL Class in accordance with the NYLL.

202.   Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover $50 for each work day the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO FURNISH ACCURATE
## WAGE STATEMENTS
### (*On Behalf of the NYLL Class*)

203.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

204.   During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

205.   The NYLL requires covered employers, including Defendants, to "furnish each

employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

206.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with proper wage statements.

207.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiff and the NYLL Class.

208.    As a result of Defendants' failure to furnish accurate wage statements to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

209.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiff and the NYLL Class in accordance with the NYLL.

210.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover $250 for each work day the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**EIGTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: SPREAD OF HOURS PAY**
**(*On Behalf of the NYLL Class*)**

211.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

212.    During the full statutory period, Plaintiff and the NYLL Class were protected by

the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.,* and 650, *et seq.*, as well as all applicable regulations thereunder, including, without limitation, the Hospitality Industry Wage Order, 12 N.Y.C.R.R. § 146-1.1, *et seq.*

213.    The NYLL and/or applicable regulations thereunder require employers, including Defendants, to furnish each of their employees one additional hour of pay at the basic minimum wage rate on each day during which the length of the interval between the beginning and end of the employee's work day, or "spread of hours," exceeds 10 hours.

214.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with spread of hours pay.

215.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide spread of hours pay to Plaintiff and the NYLL Class.

216.    As a result of Defendants' failure to furnish spread of hours pay to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, the NYLL and/or applicable regulations thereunder.

217.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: DISABILITY DISCRIMINATION
### (*On Behalf of Plaintiff Jose Brito Individually*)

218.    Mr. Brito hereby repeats and reallege the foregoing allegations as if set forth fully herein.

219.    During the full statutory period, Mr. Brito was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*

220.    As described above, Defendants were aware that Mr. Brito suffered from recognized disabilities.

221.    By the actions described above, among others, Defendants have discriminated against Mr. Brito on the basis of his disabilities by, *inter alia*, subjecting him to a hostile work environment and terminating his employment.

222.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Mr. Brito has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

223.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Mr. Brito has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

224.    Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Mr. Brito's rights under the NYSHRL, for which Mr. Brito is entitled to an award of punitive damages.

225.    Mr. Brito is further entitled to an award of reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: DISABILITY DISCRIMINATION
### (*On Behalf of Plaintiff Jose Brito Individually*)

226.    Mr. Brito hereby repeats and realleges the foregoing allegations as if set forth fully herein.

227.    During the full statutory period, Mr. Brito was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*.

228.    As described above, Defendants were aware that Mr. Brito suffered from recognized disabilities.

229.    By the actions described above, among others, Defendants have discriminated

against Mr. Brito on the basis of his disability by, *inter alia*, subjecting him to a hostile work environment and terminating his employment.

230. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Mr. Brito has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

231. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Mr. Brito has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

232. Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Mr. Brito's rights under the NYCHRL, for which Mr. Brito is entitled to an award of punitive damages.

233. Mr. Brito is further entitled to an award of reasonable attorneys' fees and costs.

### ELEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE FLSA: RETALIATION
**(*On Behalf of Plaintiff Jose Brito Individually*)**

234. Mr. Brito hereby repeats and realleges the foregoing allegations as if set forth fully herein.

235. During the full statutory period, Mr. Brito was protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

236. As set forth above, Mr. Brito complained to Defendants regarding Defendants' violations of the FLSA.

237. Defendants retaliated against Mr. Brito for his protected activity, *inter alia*, by terminating his employment immediately following his complaint.

238. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Mr. Brito has suffered, and continues to suffer, monetary and/or economic

harm for which he is entitled to an award of damages.

239.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Mr. Brito has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

240.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Mr. Brito's rights under the FLSA, for which Mr. Brito is entitled to an award of punitive damages.

241.    Mr. Brito is further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

**TWELVTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: RETALIATION**
(***On Behalf of Plaintiff Jose Brito Individually***)

242.    Mr. Brito hereby repeats and realleges the foregoing allegations as if set forth fully herein.

243.    During the full statutory period, Mr. Brito was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

244.    As set forth above, Mr. Brito complained to Defendants regarding Defendants' violations of the NYLL.

245.    Defendants retaliated against Mr. Brito for his protected activity, *inter alia*, by terminating his employment immediately following his complaint.

246.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Mr. Brito has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

247.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in

violation of the NYLL, Mr. Brito has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

248.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL, for which Mr. Brito is entitled to an award of liquidated damages.

249.    Mr. Brito is further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective, and the NYLL Class, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiff with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about

whether to participate in it;

E.       Designate Plaintiff Jose Brito as the representatives of the NYLL Class, and his counsel of record as class counsel;

F.       Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.       Determine the damages sustained by Plaintiff and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiff and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.       Award Plaintiff, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

I.       Award Plaintiff, the FLSA Collective, and/or the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees;

J.       Determine the damages sustained by Plaintiff Jose Brito as a result of Defendants' violations of New York City and State Human Rights Law, and award those damages against Defendants and in favor of Plaintiff Jose Brito, plus such pre-judgment and post-judgment interest as may be allowed by law;

K.       Grant Plaintiff, the FLSA Collective, and/or the NYLL Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the FLSA Collective, and the NYLL Class, hereby demands a trial by jury on all issues of fact and damages.

Dated: February 11, 2019          **FARUQI & FARUQI, LLP**

By:  */s/ Innessa M. Huot*
    Innessa Melamed Huot
    Alex J. Hartzband
    Patrick J. Collopy
    685 Third Avenue, 26th Floor
    New York, New York 10017
    Tel: 212-983-9330
    Fax: 212-983-9331
    ihuot@faruqilaw.com
    ahartzband@faruqilaw.com
    pcollopy@faruqilaw.com

**COMMUNITY DEVELOPMENT PROJECT**
**URBAN JUSTICE CENTER**

By:  */s/ Jeffrey L. Olshansky*
    Jeffrey L. Olshansky
    S. Tito Sinha
    123 William St, 16th Floor
    New York, NY 10038
    Phone: (646) 923-8315
    Fax: (212) 533-4598
    jolshansky@urbanjustice.org
    tsinha@urbanjustice.org

*Attorneys for Plaintiff, the Proposed FLSA*
*Collective, and the Proposed NYLL Class*