UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JOSE BRITO, ON BEHALF OF HIMSELF AND
OTHERS SIMILARLY SITUATED,

                *Plaintiffs*,       **Memorandum and Order**

      v.                    19-CV-00828(KAM)(MMH)


MARINA'S BAKERY CORP., MARGARITO
GONZALEZ and SERGIO GONZALEZ, in their
individual and professional capacities,

                *Defendants*.
--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        On February 12, 2019, Plaintiff Jose Brito
("Plaintiff") commenced this action against defendants Margarito
Gonzalez ("M. Gonzalez"), Sergio Gonzalez ("S. Gonzalez"), and
Marina's Bakery Corp. ("Marina's Bakery," and together with S.
Gonzalez and M. Gonzalez, "Defendants").  (ECF No. 1, Complaint
("Compl.").)  Plaintiff's complaint alleges that defendants
violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*
(the "FLSA"), New York Labor Law, Art. 6, §§ 1 *et seq.* (the
"NYLL"), New York State Human Rights Law, N.Y. Exec Law §§ 290,
*et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C
Admin Code §§ 801-01, *et seq.* ("NYCHRL").  (*Id.*)  Plaintiffs
Sandra Bonilla ("Bonilla") and Yoselin Cardona ("Cardona," and
together with Brito and Bonilla, "Plaintiffs") consented to join
the action as to violations of the FLSA and the NYLL on

September 17, 2019, and November 11, 2019, respectively. (ECF Nos. 28, 29.)

On March 12, 2019, Defendants answered the complaint (ECF No. 12, Answer). On June 25, 2019, Defendants' counsel filed his first motion to withdraw at attorney. (ECF No. 24.) Th Court reserved decision to allow Defendants time to retain new counsel. The case was referred to mediation on November 18, 2019. (Dkt. Entry, Nov. 18, 2019.) On March 24, 2020, Defendants' counsel filed his second motion to withdraw as attorney. (ECF No. 31.) Defendants appeared before the Court for a status conference on May 27, 2020, where they were ordered to retain new counsel before August 12, 2020. (ECF No. 33.) Thereafter, the Court granted two extensions for Defendants to retain new counsel. (ECF Nos. 39, 40.) Defendants have not communicated with the Court since the status conference on May 27, 2020. (*See* ECF No. 43, Sua Sponte Report and Recommendation.)

On November 19, 2020, the Clerk of Court entered Defendants' defaults (ECF No. 45, Entry of Default) and on May 28, 2021, Plaintiffs submitted a motion for entry of default judgment (ECF No. 48, Motion for Entry of Default Judgment ("Pl. Mot.")).

For the reasons set forth below, Plaintiffs' motion for entry of a default judgment is GRANTED against Defendants Marina's Bakery Corp., Margarito Gonzalez, and Sergio Gonzalez.

## Background

### I.   Facts Alleged Against Defendants

The following facts are taken from Plaintiffs' well pleaded complaint and detailed declarations, and are undisputed unless otherwise indicated.  (Compl.; ECF No. 50, Declaration of Innessa M. Huot ("Huot Decl."); ECF No. 51, Declaration of Jose Brito ("Brito Decl."); ECF No. 52, Declaration of Sandra Bonilla ("Bonilla Decl."); ECF No. 53, Declaration of Yoselin Cardona ("Cardona Decl.").)  At all relevant times, M. Gonzalez was the owner of Marina's Bakery and was responsible for controlling and exercising terms of employment, compensation, discipline, and employee oversight.  (*Id.* at ¶¶ 21-24.)  At all relevant times, S. Gonzalez was a manager at Marina's Bakery and was responsible for controlling and directing terms of employment, duties, hours, compensation, discipline, and employee oversight.  (*Id.* at ¶¶ 26-29.)  Marina's Bakery owns and operates two restaurants, both named "Marina's Bakery," in Staten Island, New

York and is an employer within the meaning of the FLSA, NYLL, and NYHRL and NYCHRL.  (*Id.* at ¶ 18.)

### a. Brito's Employment by Defendants

From approximately May 5, 2017, to April 7, 2018, Brito was employed as a Baker and Helper at Marina's Bakery. (Compl. at ¶ 15, 54.)  Brito worked six days a week, Monday through Saturday from approximately 6:30 or 7:00 am until approximately 8:00 or 9:00 pm., for about 60 to 90 hours per week, and typically working 12 to 15-hours each day, for a total of approximately seventy-five hours per week.  (*Id.* at ¶¶ 56-57; Brito Decl. ¶ 13.)  Between May 5, 2017, and October 7, 2017, Brito was paid a flat rate of $80 per day, or about $5 to $6 per hour.  (Compl. at ¶¶ 58, 65; Brito Decl. ¶ 14.)  On approximately October 7, 2017, Defendants raised his salary to $100 per day, which Brito received until his termination on April 7, 2018.  (*Id.* at ¶¶ 65, 108-110.)  Brito was never compensated for working more than forty hours per week or for working more than ten hours per day.  (*Id.* at ¶¶ 60-61.) Defendants required Brito to pick up his wages in person and routinely failed to make Brito's wages available until several days after his regular pay day.  (*Id.* at ¶¶ 72-75.)  Defendants did not provide Brito with a notice of pay rate or wage statements; instead, Brito logged his hours in a day planner.

(*Id.* at ¶¶ 76-78; Brito Decl. at ¶ 20; *see also* ECF No. 51-1
("Planner").)

####    b. Brito's Disability

Brito is permanently blind in his right eye and
experiences increased temperature sensitivity in that eye.
(Compl. at ¶¶ 82, 84.)  He also wears a hearing aid in his right
ear.  (*Id.* at ¶ 83.)  Brito informed Individual Defendants of
his disabilities and requested accommodations in the form of
protective googles and relief from oven-related tasks because he
experienced eye pain from the heat of the ovens, but Defendants
refused to provide any accomodations.  Defendants refused to
provide.  (*Id.* at ¶¶ 85-86, 90, 92.)  On several occasions, M.
and S. Gonzalez publicly questioned Brito's ability to perform
his work because he was "blind and deaf."  (*Id.* at ¶ 98.)  On
other occasions, they shouted in Brito's ear to mock him.  (*Id.*
at ¶ 105.)  M. and S. Gonzalez also openly taunted and laughed
at Brito for his hearing aid and visual impairment, claiming
that Brito would not do anything about their actions because no
other employer would hire him due to his disabilities.  (*Id.* at
¶¶ 104, 106.)

On April 7, 2018, S. Gonzalez and Brito had a
conversation during which S. Gonzalez taunted Brito about his
unemployability and Brito complained about Defendants' wage and
hour practices.  (*Id.* at ¶¶ 108-109.)  In that same

conversation, S. Gonzalez terminated Brito's employment.  (*Id.* at ¶ 105.)

### c. Bonilla's Employment by Defendants

From approximately December 29, 2015, to January 15, 2017, Bonilla was employed as a Baker at Marina's Bakery. (Bonilla Decl. at ¶¶ 2, 7.)  Bonilla worked six or seven days a week, for approximately eleven to twelve hours per day, for a total of approximately sixty-six to eighty-four hours per week. (*Id.* at ¶ 11.)  Defendants paid Bonilla a flat rate of $80 per day.  (*Id.* at ¶ 12.)  She was never compensated for working more than forty hours per week or for working more than ten hours per day.  (*Id.* at ¶¶ 15-16.)  Defendants did not provide Bonilla with a notice of pay rate or wage statements (*id.* at ¶ 13), and routinely failed to make Bonilla's wages available until several days or even several weeks after her scheduled pay day.  (*Id.* at ¶ 18).

### d. Cardona's Employment by Defendants

From approximately December 29, 2015, to January 15, 2017, Cardona was employed as a Baker and Server at Marina's Bakery.  (Cardona Decl. at ¶¶ 2, 7.)  Cardona worked six or seven days a week, for approximately twelve hours per day, for a total of approximately sixty-six to eighty-four hours per week. (*Id.* at ¶¶ 10, 13.)  Defendants paid Cardona a flat rate of $80 per day.  (*Id.* at ¶ 13.)  She was never compensated for working

more than forty hours per week or for working more than ten hours per day.  (*Id.* at ¶¶ 14-15.)  Defendants did not provide Cardona with a notice of pay rate or wage statements (*Id.* at ¶ 12), and routinely failed to make Cardona's wages available until several days or even several weeks after her scheduled pay day (*Id.* at ¶ 17).

## II.  Procedural Background

On February 12, 2019, Brito filed the instant complaint against Defendants under the FLSA, NYLL, NYSHRL, and NYCHRL for failure to pay minimum wage, unpaid overtime compensation, late payment of wages, failure to provide notices of pay rate, failure to furnish accurate wage statements, unpaid spread of hours compensation, disability discrimination, and retaliation.  (*See generally* Compl.)

Defendants were served with a summons and a copy of the complaint on February 20, 2019.  (ECF Nos. 9, 10, 11.)  On March 12, 2019, Defendants answered the complaint by denying all allegations and presenting six affirmative defenses.  (*See generally* Answer.)  On April 30, 2019, the Court ordered the action conditionally certified as a Collective Action under the FLSA.  (ECF No. 22; *see also* ECF Nos. 17, 21.)  Plaintiffs Bonilla and Cardona joined the action on September 17, 2019, and November 11, 2019, respectively.  (ECF Nos. 28, 29.)

Though Defendants' counsel first moved to withdraw on June 17, 2019 (ECF No. 24, 26), on August 9, 2019, Defendants' counsel notified the Court of his intention to continue his representation of Defendants.  (ECF No. 27.)  On February 11, 2020, the parties participated in a mediation (ECF No. 30.)  On March 24, 2020, counsel for Defendants submitted his second motion to withdraw (ECF Nos. 31, 32).  The parties appeared before Magistrate Judge Cheryl L. Pollak on May 27, 2020, for a motion to withdraw proceeding.  (ECF No. 33.)  During the conference, Defendants stated that they would hire new counsel, and Magistrate Judge Pollak ordered that Defendants do so within sixty days, or before August 12, 2020, or she would enter a default judgment against them.  (*Id.*)  Despite receiving ample notice of the order (*see* May 29, 2020, Min. Entry; ECF No. 33), Defendants failed to comply with the court order.  On August 17, 2020, Magistrate Judge Pollak ordered Defendants to show cause by September 14, 2020, as to why a default judgement should not be entered against them.  (ECF No. 39.)  Defendants failed to respond to the order to show cause.  On September 28, 2020, Magistrate Judge Pollak issued a third order, providing Defendants with "a final opportunity" to obtain counsel within 14 days, by October 12, 2020, to avoid a default. (ECF No. 40.)  Again, despite being served (ECF No. 41), Defendants failed to respond to the September 28, 2020, order, and have not

8

communicated with the Court since the status conference on May 27, 2020.

On October 13, 2020, Plaintiffs moved for entry of default, with a request for leave to file a separate motion on damages within forty-five days.  (ECF No. 42, Motion for Entry of Default).  On October 21, 2020, the Magistrate Judge Pollak *sua sponte* issued a Report and Recommendation, recommending the entry of default if Defendants failed to communicate with the Court by November 4, 2020.  (ECF No. 43, Report and Recommendation.)  Defendants failed to communicate with the Court by November 4, 2020.  The Court's Order adopting the Report and Recommendation (Dkt. Entry, Nov. 18, 2020) was served on Defendants on November 23, 2020. (Dkt. Entry, Nov. 23, 2020.) The Clerk of the Court entered a notation of default on November 19, 2020.  (ECF No. 45, Clerk's Entry of Default.)

Plaintiffs now move for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b).  (*See generally* Pl. Mot.)  Plaintiffs request a total of $1,169,831.55 in damages, costs, and fees.  (*See* ECF No. 49, Plaintiff's Memorandum of Law ("Pl. Mem.").)

## Legal Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation.  *See* Fed. R. Civ. P. 55; *see also City*

*of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 128 (2d Cir. 2011).  It provides "a 'two-step process' for the entry of judgment against a party who fails to defend."  *Id.; see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  Then, the plaintiff must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

"[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co.* at 208.  Because a default judgment is an extreme remedy, "[d]efault judgments 'are generally disfavored and are reserved for rare occasions.'"  *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir.1993)).  Before entering a default judgment, the court "must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law."  *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020) (citations omitted).

10

On a default judgment motion, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the plaintiff's complaint, except for claims relating to damages. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see generally Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014) (under both a motion to dismiss and a motion for default, the plaintiff must proffer well-pleaded allegations). Once the defendant is found to be in default, the plaintiff bears the burden of showing that she is entitled to recovery. *See Danser v. Bagir Int'l*, 571 F. App'x 54, 55 (2d Cir. 2014); *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 58 (2d Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04 Civ. 4631, 2007 WL 4326920, at *7 (E.D.N.Y. Dec. 7, 2007).

When damages for a default judgment are "not susceptible to simple mathematical calculation, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 91 (E.D.N.Y. 2020) (quoting *Am. Jewish Comm. v. Berman*, No. 15 Civ. 5983, 2016 U.S.

Dist. LEXIS 78068 at *4 (S.D.N.Y. June 15, 2016) (internal citation omitted)). Therefore, a court may rely on "detailed affidavits and documentary evidence," in addition to the plaintiff's complaint, to determine the sufficiency of a default judgment claim. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *see Cement & Concrete Workers*, 699 F.3d at 234. The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *see Cement & Concrete Workers*, 699 F.3d at 232. "The moving party is entitled to all reasonable inferences from the evidence it offers." *Gutierrez v. Taxi Club Mgmt.*, 2018 U.S. Dist. LEXIS 106808, at *7 (E.D.N.Y. June 25, 2018).

## **Discussion**

## I.  **The Factors Relevant To A Default Judgment Are Satisfied**

When deciding whether to grant default judgment, the court considers three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 141 (E.D.N.Y. 2013) (quoting *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02-cv-

9044(LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)
(citation omitted)).

### A. Willful Default

In general, even if a defendant files an answer, a
defendant's continued failure to respond to court orders to
obtain new counsel evinces willful default. *See Powerserve
Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (finding
default willful where individual and corporate defendants only
obtained new counsel two months after the court's ordered
deadline); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d
114, 123 (E.D.N.Y. 2011) (after initial counsel withdrew,
defendants' failure to hire new counsel and respond to court
order constituted willful default); *Next Proteins, Inc. v.
Distinct Beverages, Inc.*, No. 09-cv-4534 (DRH) (ETB), 2012 WL
314871, at *2 (E.D.N.Y. Feb. 1, 2012) (finding default willful
where initial counsel withdrew and defendants ignored multiple
court orders to appear with new counsel).

In the present case, Defendants last appeared before
the Court on May 27, 2020. (ECF No. 33.)  On June 1, 2020,
Magistrate Judge Pollak ordered Defendants to appear with new
counsel. (*Id.*)   After Defendants failed to respond, Magistrate
Judge Pollak twice extended Defendants' deadline to appear with
substitute counsel, and warned that Defendants could be found in
default. (*See* ECF Nos. 39, 40.)  Magistrate Judge Pollak further

offered Defendants an opportunity to object to the court's
Report and Recommendation for entry of default (ECF No. 43).
Defendants failed entirely to communicate with the Court in
response to Magistrate Judge Pollak's orders or otherwise, and
failed to avail themselves of the opportunity to appear with new
counsel.  Defendants' continued failure to respond to court
orders demonstrates willful default.

### B. Meritorious Defenses

A defense may be meritorious if it is more than a
"conclusory denial" and if it is articulated "with a degree of
specificity which directly relates that defense to the
allegations set forth in the plaintiff's pleadings and raises a
'serious question' as to the validity of those allegations."
*New Falls Corp. v. Soni Holdings, LLC*, No. 19-cv-0449(ADS)(AKT),
2020 WL 2770922, at *6 (E.D.N.Y. May 8, 2020), *report and
recommendation adopted*, No. 19-cv-00449(ADS)(AKT), 2020 WL
2770015 (E.D.N.Y. May 28, 2020) (citations omitted).  Though a
meritorious defense may rely on the plaintiff's pleading without
supporting evidence, a defendant must do more than merely assert
that a defense exists.  *Id*.  A defendant's affirmative defense
in its answer does not, by itself, constitute a meritorious
defense.  *See Beata Music LLC v. Danelli*, No. 18-cv-6354 (JGK),
2021 WL 195708 (S.D.N.Y. Jan. 20, 2021) (finding that defendant
did not advance meritorious defenses when it filed an answer

14

with affirmative defenses but refused to engage in discovery);
*Jeepster Recordings Ltd. v. World's Fair Label Grp., Inc.*, No.
09-cv-2155 (RLE), 2010 WL 653476 (S.D.N.Y. Feb. 22, 2010)
(defendant failed to advance meritorious defenses when it filed
an answer and conducted some discovery but had otherwise
abandoned the litigation).

   In the instant case, although Defendants responded to
the complaint and conducted at least some discovery until the
mediation on February 11, 2020 (*see* Huot Decl. at ¶¶ 13-14),
they did not thereafter submit evidence supporting their
affirmative defenses (*See generally* Answer; ECF No. 30).
Moreover, the Court does not find any of the affirmative
defenses raised in Defendants' answer to sufficiently "raise[] a
'serious question' as to the validity" of Plaintiffs'
allegations.  (*See, e.g.*, ECF No. 12, Answer, ¶¶ 250-277); *New
Falls Corp.*, 2020 WL 2770922, at *6.  Finally, even if
Defendants *had* raised serious questions as to the validity of
Defendants' allegations, Defendants subsequently abandoned the
litigation, including their defenses, after engaging in limited
discovery.  Defendants have therefore not successfully advanced
meritorious defenses.

### C. Prejudice Toward Plaintiff

   The final factor the Court must consider in
determining whether to grant a plaintiff's motion for default

judgment is whether the plaintiff would be prejudiced if their motion for default were denied.  A plaintiff is considered prejudiced by the denial of default judgment if they have "no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, 2008 U.S. Dist. LEXIS 107062, at *5 (S.D.N.Y. Oct. 24, 2008); *see also Intrepidus, LLC v. Bivins*, No. 15-Civ-7721, 2017 U.S. Dist. LEXIS 65087, at *8 (S.D.N.Y. Apr. 28, 2017) ("[The plaintiff] will be prejudiced if it cannot seek relief for its claims in light of Defendants' default in this case, as the case has been pending [for two years].").  Here, Defendants' abandonment of the case has left Plaintiffs unable to pursue their claims by any means other than a default judgment, denial of which would prejudice Plaintiffs by precluding them from securing relief.

Accordingly, Defendants' abandonment of the case warrants an entry of default judgment against them.  The Court

will treat the allegations in the complaint as true for the purposes of an inquiry into Defendants' liability.

## II.   Defendants Qualify for Protections Under the FLSA and the NYLL[1]

### A. Plaintiffs Qualify for FLSA Protections

#### 1. Employment Relationship Between Plaintiffs and Defendants

As a threshold matter, in order to establish a claim under the FLSA for minimum wage or overtime compensation, a a plaintiff must show that there was an employment relationship between the plaintiff as an employee, and the defendant as an

---

[1] As a threshold matter, Plaintiffs' FLSA and NYLL claims are timely, though certain Plaintiffs are limited in their ability to recover under the FLSA. "The statute of limitations for an FLSA claim is two years, unless the violation is 'willful,' in which case it is three years." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citing 29 U.S.C. § 255(a)). When a defendant defaults, the violation is considered "willful" and the three-year statute of limitations applies. *Blue v. Finest Guard Servs., Inc.*, No. 09-cv-133 (ARR), 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010), *report and recommendation adopted*, No. 09-cv-133 (ARR)(CLP), 2010 WL 2927403 (E.D.N.Y. July 19, 2010). The statute of limitations starts to run when the employee begins to work for the employer. *See Wicaksono v. XYZ 48 Corp.*, No. 10-cv-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, No. 10-cv-3635 (LAK), 2011 WL 2038973 (S.D.N.Y. May 24, 2011). In the instant case, Defendants defaulted, and therefore the three-year FLSA statute of limitations applies. Brito began working on approximately May 5, 2017, and filed the complaint on February 12, 2019. (*See* Brito Decl. at ¶ 2.) Plaintiffs have not argued that any equitable tolling should apply. Therefore, the statute of limitations within which Plaintiff class members may recover damages under the FLSA extends from February 12, 2016, to February 12, 2019. Bonilla began working on December 29, 2015. (Bonilla Decl. at ¶ 2.) As such, Bonilla is unable to recover under the FLSA for her employment between December 29, 2015, and February 11, 2016. Cardona began working in November 2015. (Cardona Decl. at ¶ 2.) Cardona is therefore unable to recover under the FLSA for her employment between November 2015 and February 11, 2016. The statute of limitations for an NYLL claim is six years, N.Y.L.L. § 663(3), and it begins to run when the employee begins to work for the employer, *see Wicaksono*, 2011 WL 2022644, at *3. As Plaintiffs' employment began well within the six-year statute of limitations under the NYLL, Plaintiffs' NYLL claims are timely. Further, at all relevant times, Plaintiffs' recovery is greater under the NYLL.

employer, as defined by the FLSA. The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  It defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Supreme Court has specifically noted the "expansiveness" of the FLSA's definition of the term "employer[.]" *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 431, 38 L. Ed. 2d 406 (1973); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (Second Circuit affords the provisions within the FLSA an "expansive interpretation" to ensure that the statute's provisions have "the widest possible impact on the national economy.").  The Second Circuit has adopted a multi-factor test based on "economic reality" to determine whether an employment relationship exists between a plaintiff and defendant. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013).  The test asks whether the alleged employer-defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled his work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 105 (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).  The test looks at the

totality of the circumstances, and no individual factor is dispositive. *Id.* at 105.

Here, Plaintiffs have shown that they had an employee-employer relationship within the FLSA's definitions, and have also sufficiently alleged that the Defendants qualify as "employers" under the Second Circuit's expansive interpretation, given the control they exerted over Plaintiffs. *See Herman*, 172 F.3d at 139. Plaintiffs specifically allege in their complaint that they were Defendants' employees within FLSA's definitions, and that M. Gonzalez is the owner of Defendant Martina's Bakery Corp., and S. Gonzalez is a manager at Defendant Marina's Bakery Corp. (*See* Compl. at ¶¶ 21, 26); *see also Palaghita v. Alkor Cap. Corp.*, No. 19-cv-1504 (ARR)(RER), 2021 WL 4464121, at *8 (E.D.N.Y. Aug. 20, 2021), *report and recommendation adopted*, No. 19-cv-1504(ARR)(RER), 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) ("Under the FLSA, an employer is 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'") (citation omitted). Plaintiffs have also alleged three of the four factors under the multi-factor employer test, specifically that Defendants had the power and authority to hire and discipline Plaintiffs, (*id.* at ¶¶ 23, 28), controlled Plaintiffs' work schedules, (*id.* at ¶¶ 24, 29), and determined the amount and the manner in which Plaintiffs were paid. (*Id.* at ¶¶ 22, 27.) These allegations, in the context of Plaintiffs'

19

factual allegations regarding their work at the restaurant, are sufficient for a finding of an employment relationship under the FLSA. *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *3 (E.D.N.Y. Dec. 2, 2016), *report and recommendation adopted*, No. 15-cv-2482(DRH)(SIL), 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016) (holding that plaintiff sufficiently showed an employer-employee relationship by stating that he worked in a restaurant owned by defendant, that defendant paid him on a weekly basis by cash and check, and that defendant docked his pay if he missed work); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015) (holding that where plaintiffs have shown that individual defendants satisfied three of the four factors under the FLSA, plaintiffs had established "economic reality" in which individual defendants were plaintiffs' joint employers).

Moreover, as to the fourth factor, a plaintiff's inability to show that the defendant kept employment records is not fatal to plaintiff's claims, particularly where, as here, the defendant's informal, unrecorded employment arrangements form a part of the basis for the complaint. *See, e.g., Fermin*, 93 F. Supp. 3d at 36 (holding that plaintiff satisfied the employment relationship requirement although defendant did not keep employment records, and noting that failure to keep employment records is itself a violation of the FLSA).

20

Moreover, as discussed *supra*, Defendants defaulted in raising any defenses regarding their status as employers.

Accordingly, for the foregoing reasons, the Court finds that Plaintiffs have established an employment relationship within the meaning of the FLSA to impose liability on the Defendants as employers.

### 2. Non-Exempt Employee Status

The FLSA further requires that the plaintiff-employee does not fall under any of its exemptions. The FLSA does not extend minimum wage and overtime protections to "any employee employed in bona fide executive, administrative, or professional capacity ... or in the capacity of outside salesman." 29 U.S.C. § 213(a)(1).  Whether a plaintiff-employee falls under such exemptions is a question of law.  *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

Here, Plaintiffs' complaint and supporting declarations establish that as a matter of law, the Plaintiffs' jobs as Bakers and Helpers constitute non-exempt employment under the FLSA.  (*See* Brito Decl. § 2; Bonilla Decl. § 7, Cardona Decl. § 7); *see Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-cv-486, 2011 WL 1431978, at *3-4 (E.D.N.Y. Apr. 14, 2011) (finding that the FLSA regulations did not exempt the plaintiff from the FLSA's protections due to his position as a cook, which did not make him an "executive employee," a

"creative professional," or a "learned professional"); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (certifying an FLSA class including servers, bus-persons, food preparers and dishwashers); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320-22 (S.D.N.Y. 2007) (stating that waiters, bartenders, runners and/or bussers were non-exempt employees under the FLSA).  Plaintiffs' duties do not render them employees exempt from FLSA's minimum wage and overtime protections.

### 3. Interstate Commerce Requirement

In addition, the FLSA requires that the plaintiff-employee is either (1) "engaged in commerce or the production of goods for commerce," or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a).  To be an "enterprise engaged in commerce," the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) "employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person."  29 U.S.C. §§ 203(s)(1)(A)(i)-(ii); *see Valdez v. H & S Restaurant*

*Operations, Inc.*, No. 14-cv-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016).

Plaintiffs have shown that Marina's Bakery is an "enterprise engaged in commerce." [2] The FLSA defines that term as an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Plaintiffs' complaint states that "[u]pon information and belief, during the entire relevant time period, Defendants have engaged in interstate commerce and have revenues in excess of $500,000 per year." (Compl. at ¶ 20.) Defendants' answer admits that they engage in interstate commerce with more than $500,000 in annual revenue. (Answer at ¶ 20.) The complaint and Plaintiffs' declarations establish that Defendants routinely delivered their food to stores and restaurants in New Jersey. (*See* Compl. at ¶ 32; Brito Decl. at ¶ 3; Bonilla Decl. at ¶ 4, Cardona Decl. at ¶ 4.) Moreover, it is reasonable to infer that the tools and goods required to operate a restaurant engaging in interstate

---

[2] For the purposes of the FLSA, "commerce" is defined as interstate or international commerce. 29 U.S.C.A. § 203(b) (defining "commerce", in pertinent part, as "commerce ... among the several States or between any State and any place outside thereof"); *see Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) (explaining interstate commerce requirement).

commerce of more than $500,000 do not exclusively come from New York State. *See Huerta v. Victoria Bakery*, No. 10 Civ. 4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("It is inconceivable that some of the bread-making materials used by [the] plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York.").

Accordingly, the court finds defendant-employers are an "enterprise engaged in interstate commerce" within the meaning of the FLSA. Plaintiffs are therefore entitled to coverage under the FLSA.

**B. Plaintiffs Qualify for NYLL Protections**

To recover under the NYLL, Plaintiffs must prove that they were "employees" and that Defendants were "employers" as defined by the statute. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badnya*, No. 13-cv-4021, 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). As another distinction, the NYLL's definition for "employer" centers on the degree of control that the employer exercised over the employee. *Id*. Despite these differences in criteria, generally, where liability is found under the FLSA, it is also found under the NYLL. *Fermin*, 93 F. Supp. 3d at 37

24

(collecting cases); *Martir v. Huntington Provisions Inc.*, No. 19-CV-2412 (DRH) (AYS), 2020 WL 2736696, at *3 (E.D.N.Y. Apr. 29, 2020 (citing *Guardado*, 2016 WL 7480358, at *5).

Under the NYLL, an employee-employer relationship is established through the "the degree of control exercised by the purported employer" over the employee." *Hart v. Rick's Cabaret Int'l., Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013). In analogous cases involving full-time restaurant workers, plaintiffs have successfully established employee-employer relationships under the NYLL. *See, e.g., Fermin* 93 F. Supp. 3d 19, 34-35 (E.D.N.Y. 2015) (court found an employee-employer relationship under the NYLL where plaintiff restaurant workers were required to work at set hours, were on the defendant's payroll, and maintained a fixed schedule). Plaintiffs here are similarly situated, as Defendants set Plaintiffs' work schedules (*see* Compl. ¶ 24, 29; *see also* Brito Decl. at ¶ 12; Bonilla Decl. at ¶ 10, Cardona Decl. at ¶ 10), Plaintiffs' work hours (*see* Compl. ¶ 24, 29; *see also* Brito Decl. at ¶ 11; Bonilla Decl. at ¶ 9; Cardona Decl. at ¶ 9), and Plaintiffs' terms of compensation (*see* Compl. at ¶¶ 24, 29, 47-48; *see also* Brito Decl. at ¶¶ 21-22; Bonilla Decl. at ¶ 18; Cardona Decl. at ¶

17).  The Court finds that Plaintiffs qualify as employees under the NYLL.

## III.   The Defendants are Jointly Liable

Plaintiffs seek to recover from Defendants, jointly and severally.  (ECF No. 49, Pl. Mem., p. 24; *see also* Compl. ¶ 116.)  Based on the Court's in-depth analysis regarding the employment relationship *supra*, the Court finds that the Individual Defendants and Marina's Bakery Corp. are jointly liable, as they were Plaintiffs' employers.  *See Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 153 (E.D.N.Y. 2019) ("Where there is a claim premised on joint liability, it is impossible for one defendant to be liable unless all other defendants are also liable.")

## IV.   Liability

### A. Defendants are Liable for their Failure to Pay Minimum Wage, Overtime, and Spread-of-Hours Compensation as Required by the FLSA and the NYLL

The FLSA requires employees to be compensated at a minimum hourly rate for each hour that they work.  *Wicaksono*, 2011 WL 2022644, at *3 (citing 29 U.S.C. § 206(a)).  New York law has the same requirement.  N.Y.L.L. § 652(1).  A plaintiff may recover under the statute which provides the greatest amount of damages.  *See Wicaksono*, 2011 WL 2022644, at *3 (citing 29 U.S.C. § 218(a); *Jiao v. Shi Ya Chen*, No. 03-cv-0165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) ("The federal

26

minimum wage does not preempt the state minimum wage[,] and a
plaintiff may recover under whatever statute provides the
highest measure of damages[.]")).  Accordingly, Plaintiffs are
entitled to recover whichever minimum wage, state or federal,
was the highest at any given period of their employment.  *Id*.
(citing *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-
cv-3725 (DC), 2010 WL 4159391, at *2, n. 2 (S.D.N.Y. Sept. 30,
2010)).  As provided herein, the Court will apply the New York
minimum wage which was higher than the federal minimum wage
during the relevant periods.

       The FLSA requires that employees must be paid a
minimum of one and one-half times the regular rate they are
normally paid "for any hours worked in excess of forty hours in
a given week." *Reiseck*, 591 F.3d at 104 (citing 29 U.S.C. §
207(a)).  New York state law treats overtime compensation in the
same manner. *Duro v. BZR Piping & Heating Inc.*, No. 10-cv-0879
(ARR) (ALC), 2011 WL 710449, at *3 (E.D.N.Y. Jan. 26, 2011),
*report and recommendation adopted*, No. 10-cv-879 (ARR) (ALC),
2011 WL 744156 (E.D.N.Y. Feb. 22, 2011) (citing N.Y.L.L.
§ 198(1-a)).  In addition, New York law requires employers to
pay their employees "one additional hour of pay at the minimum
hourly wage" for every day that they work more than ten hours,
known as "spread-of-hours." *Duro*, 2011 WL 710449, at *3 (citing

N.Y.L.L. § 652).  There is no similar FLSA provision.
*Wicaksono,* 2011 WL 2022644, at *6.

During the relevant periods, New York State and New York City's minimum wage rates were higher than federal minimum wage, and therefore the Plaintiffs were entitled to compensation under the highest available minimum wage rate.  *Compare* N.Y.L.L § 652(1)(a) (New York minimum wage was $8.75 per hour between December 31, 2014, and December 30, 2015, and $9.00 per hour between December 31, 2015, and December 30, 2016) *and* N.Y.L.L § 652(1)(a) (for employers with 11 or more employees, New York City minimum wage was $11.00 per hour between December 31, 2016, and December 30, 2017, and $13.00 per hour between December 31, 2017 and December 30, 2018) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage was $7.25 per hour after July 24, 2009).  At all relevant times, Marina's Bakery was located in New York City and employed between 30 and 40 employees. (Compl. at ¶ 33.) Defendants are therefore large employers and bound by the New York State and New York City minimum wage laws.  *See* N.Y.L.L. § 652(1)(a).

Under the FLSA and the NYLL, an employee seeking to recover unpaid wages has the burden of proving that he performed work for which he was not properly compensated.  *Wicaksono*, 2011 WL 2022644, at *2 (quoting *Jiao*, 2007 WL 4944767, at *2 (quotation omitted)).  An employer, however, has a burden under

28

state and federal law to maintain records of the wages, hours, and persons employed by him. *Id.* When the employer fails to meet this burden, a plaintiff may meet his or her burden of establishing how many hours he or she worked "by relying solely on his or her recollection." *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (citing *Doo Nam Yang v. ACBL Corp.,* 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (noting that "the employee's burden in this regard is not high").

A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked. *See generally Wicaksono*, 2011 WL 2022644. Similarly, to plead FLSA and NYLL overtime claims, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *see also* N.Y. Comp. Codes R. & Regs. tit. 12, 142-2.2 (stating that an employer shall pay an employee for overtime "in the manner and methods provided in and subject to the exemptions of [the FLSA]"). To sufficiently plead a spread-of-hours claim under the NYLL, a plaintiff must allege that she worked more than 10 hours in a day and was not paid the requisite additional hour at minimum

wage.  *See Zokirzoda v. Acri Cafe Inc.*, No. 18-cv-11630 (JPO),
2020 WL 359908, at *3 (S.D.N.Y. Jan. 22, 2020) (finding
sufficient spread-of-hours claim where plaintiffs' complaint
alleged that they had worked more than ten hours per day and not
received spread-of-hours pay).

          Here, Plaintiffs have sufficiently shown through the
complaint, their declarations, and documentary evidence (ECF No.
51-1, Brito's Planner), that Defendants failed to pay Plaintiffs
the required minimum wage, overtime, and spread-of-hours
compensation.  As alleged in the complaint, Defendants paid
Plaintiffs at rates "drastically below the applicable State
minimum wage[,]" and "never pa[id] [Plaintiffs] overtime
compensation or spread of hours pay."  (Compl. ¶¶ 2, 37-43
(noting that the unlawful compensation scheme is carried out
directly by Individual Defendants, that the restaurant's
employees are paid below the applicable state minimum wage for
averages of 60 to 80 hours of work per week, and that Defendants
never paid restaurant employees overtime compensation or spread
of hours pay).)  Further, by defaulting (ECF No. 45), Defendants
have not contradicted Plaintiffs' specific allegations, credible
declarations, and other supporting documentation, which
sufficiently set forth the days and hours they worked for
Defendants and the pay that Defendants gave Plaintiffs as
compensation for their work.  Plaintiffs have demonstrated that

they are entitled to damages for Defendants' failure to pay minimum wage, overtime, and spread-of-hours compensation.

More specifically, as alleged in the complaint and as supported by the Brito declaration and planner, between May 5, 2017, and April 7, 2018, Brito worked 6 days of the week and approximately 60 to 90 hours per week, for an average of 75 hours per week at a rate of $80 per day. (*See* Compl. at ¶¶ 54, 56-58; Brito Decl. at ¶ 13; ECF No. 51-1, Planner.) Accordingly, between May 5, 2017, and October 6, 2017, Brito was paid *below* the applicable state minimum wage. (Compl. at ¶¶ 57-58); *see* N.Y.L.L § 652(1)(a) (for employers with 11 or more employees, New York City minimum wage was $13.00 per hour between December 31, 2017 and December 30, 2018). Mr. Brito provides examples of this underpayment: on June 3, 2017, he worked 15.75 hours but was only paid $80, amounting to $5.07 per hour, at a time when the applicable statutory minimum wage was $13.00 per hour. (Brito Decl. ¶ 15); *see* N.Y.L.L § 652(1)(a). As another example, from May 15, 2017 to May 21, 2017, Mr. Brito worked one 15-hour shift, two 14-hour shifts, two 14.5-hour shifts and one 13.5-hour shift, for a total of 85.5 hours, with six shifts exceeding 10 hours in length, and was paid a total of $480 for these 85.5 hours of work, amounting to only $5.61 per hour, well below the statutory minimum wage of $13.00 per hour. (Brito Decl. ¶ 16); *see* N.Y.L.L § 652(1)(a) (the applicable

31

statutory minimum wage at that time was $13.00 per hour).  On October 7, 2017, Brito received a raise to $100 per day. (Compl. at ¶ 65.)  Even after receiving this raise, during a six-day work week where Mr. Brito worked an average of 75 hours as alleged in the complaint and in his declaration, Mr. Brito would only have been paid approximately $8.00 per hour, still far below the $13.00 statutory minimum wage.  (Brito Decl. at ¶ 13); *see* N.Y.L.L § 652(1)(a).  Accordingly, both hourly rates Brito was compensated at fall below the New York City minimum wage of $11.00 and $13.00 per hour for the relevant periods. Furthermore, Brito consistently worked over 40 hours per week but was not paid overtime.  (Compl. at ¶ 63; Brito Decl. at ¶ 17.)  Brito also worked over 10 hours per shift but did not receive spread-of-hours pay.  (Compl. at ¶ 71; Brito Decl. at ¶ 18.)

Though not referenced in the complaint, Plaintiffs Bonilla and Cardona specifically allege their own compensation violations in their respective declarations.  Between December 29, 2015, and January 15, 2017, Bonilla worked 11-12 hours per day for six or seven days a week, totaling approximately 66-84 hours per week. (ECF No. 52, Bonilla Decl. at ¶¶ 2, 11.)  She was paid $80 per day, or approximately $6.67 per hour, based on a twelve hour work day.  (*Id.* at ¶¶ 12, 14.)  From November 2015 through July 2016, Cardona worked 12 hours per day for seven

32

days a week, totaling approximately 84 hours per week. (Cardona
Decl. at ¶¶ 2, 10.)  She was also paid only $80 per day, or
approximately $6.67 per hour.  (*Id.* at ¶¶ 11, 13.)  Both Bonilla
and Cardona's hourly rates fall well below the New York State
and City minimum wage rates of $8.75 to $11.00 per hour for the
relevant periods.  Furthermore, both Bonilla and Cardona
consistently worked over 40 hours per week but were not paid
overtime.  (Bonilla Decl. at ¶ 15; Cardona Decl. at ¶ 14.)  Both
plaintiffs also worked over 10 hours per shift but did not
receive spread-of-hours pay.  (Bonilla Decl. at ¶ 18; Cardona
Decl. at ¶ 15.)  Plaintiffs have sufficiently put forth a
"simple arithmetic calculation" which clearly demonstrates
Defendants' wage violations. *See Villanueva v. 179 Third Ave.
Rest Inc.*, No. 16-cv-8782 (AJN), 2019 WL 4744707, at *4
(S.D.N.Y. Sept. 30, 2019) ("it is sufficient for a plaintiff to
allege facts about her salary and working hours, such that a
simple arithmetical calculation can be used to determine the
amount owed per pay period.").

### B. Defendants are Liable for Late Payments to Plaintiffs

Plaintiffs have also sufficiently alleged in their
complaint and shown in their declarations that Defendants failed
to timely pay their wages under the FLSA and NYLL.  "Pursuant to
section 191(a) of the NYLL, manual workers like plaintiffs must

33

'be paid weekly and not later than seven calendar days after the week in which the wages are earned.'" *Chen v. JP Standard Constr. Corp.*, No. 14-cv-1086 (MKB) (RLM), 2016 WL 2909966, at *8 (E.D.N.Y. Mar. 18, 2016) (quoting NYLL § 191(a)(i)), *report and recommendation adopted by* 2016 WL 2758272 (E.D.N.Y. May 12, 2016). Relatedly, though the FLSA does not expressly require a set payment schedule, courts in this circuit have "consistently interpreted Section 206(a) of the FLSA to require the prompt payment of wages." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 425 (S.D.N.Y. 2017) (citing *e.g.*, *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F.Supp.3d 336, 353 (S.D.N.Y. 2014); *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 57 (2d Cir. 1998) ("it is [...] clear that the FLSA requires wages to be paid in a timely fashion")).

Here, Plaintiffs have sufficiently alleged and established that Defendants regularly withheld their wages for days on end, and for as much as two to three weeks after their regularly scheduled pay days. (Compl. ¶ 47; Brito Decl. ¶¶ 21-22; Bonilla Decl. ¶ 18; Cardona Decl. ¶ 17.) Defendants conceded the existence of a weekly pay period, which ran from Monday to Sunday, and that Mondays were Plaintiffs' designated scheduled pay days. (*See* Answer ¶¶ 44, 74 (admitting allegation in Complaint regarding regularly scheduled pay days). Courts have found such allegations to be sufficient to state a claim

for late payment of wages under the NYLL and FLSA, and the Court
finds that Plaintiffs' allegations have likewise sufficiently
stated a claim for late wages. *See e.g., Belizaire*, 61 F. Supp.
3d at 353–54 (plaintiff should be awarded compensatory damages
under the NYLL for a delay of sometimes more than two weeks
between the end of a work week and the issuance of a paycheck);
*Testa v. Carefusion*, No. 14-cv-5202 (JFB) (AKT), 2016 WL
4099113, at *6 (E.D.N.Y. Aug. 2, 2016) (allegations that
Plaintiff was owed commissions that were not paid upon his
termination was sufficient to state a claim under NYLL §
191(3)).

### C. Defendants are Liable for Wage Notice and Wage Statement Violations

Plaintiffs have also sufficiently alleged and shown a
claim for Defendants' failure to furnish them with the
statutorily required Notices of Pay Rate and/or accurate wage
statements.  Under New York Law, an employer must provide (1) at
the time of hiring, a notice containing information such as "the
rate or rates of pay and basis thereof, whether paid by the
hour, shift, day, week, salary, piece, commission, or other;
allowances, if any, claimed as part of the minimum wage ... the
physical address of the employer's main office ... the telephone
number of the employer,"; and (2) "a statement with every
payment of wages, listing ... the dates of work covered by that

35

payment of wages" as well as pay rate information.  N.Y. Lab.
Law §§ 195-1(a), 195-3.  Plaintiffs allege and declare that
Defendants never provided them with any form of Notices of Pay
Rate or any type of earning statements at all, much less
regular, detailed or accurate notices and statements as required
by the NYLL. (*See* Compl. ¶¶ 76-81; Brito Decl. ¶ 8; Bonilla
Decl. ¶ 13, Cardona Decl. ¶ 12.)  Accordingly, the Court finds
that Defendants are liable for their failure to provide wage
notice and wage statements to Plaintiffs. *See Herrera v. Tri-*
*State Kitchen & Bath, Inc.*, No. 14-cv-1695, 2015 WL 1529653, at
*6 (E.D.N.Y. Mar. 31, 2015) (finding defendants liable under
NYLL § 195(1)(a) and § 195(3) where plaintiffs "did not receive
written notice of wage information when they were hired" and
they "did not receive written notice ... with every payment of
wages").

### D. Liability as to Mr. Brito's Retaliation Claims[3]

Mr. Brito has sufficiently alleged retaliation claims
under the FLSA and NYLL.  To state a retaliation claim under the
FLSA and the NYLL retaliation, Mr. Brito must, "plead facts
showing a prima facie case of retaliation, namely: (1)
participation in protected activity known to the defendant; (2)

---

[3] As to Mr. Brito's retaliation claim, Plaintiffs attempt to rely on Mr.
Brito's declaration to a large extent, even where there is no specific,
corresponding support in Plaintiffs' complaint. As the instant motion is a
motion for default judgment, the Court must decide the motion on the basis of
the pleading.

an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Porter v. MooreGroup Corp.*, No. 17-cv-07405(KAM)(VMS), 2020 WL 32434, at *10 (E.D.N.Y. Jan. 2, 2020) (citing *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011); *Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010)) (FLSA); *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (NYLL).

Mr. Brito sufficiently pleads each element of a retaliation claim under the FLSA and NYLL.  As alleged in the complaint, on April 7, 2018, Mr. Brito engaged in protected activity by complaining to S. Gonzalez about "Defendants' unlawful wage practices of paying him at rates that are considerably below the minimum wage and not paying him overtime."  (Compl. ¶¶ 108-09; Brito Decl. ¶¶ 43-47); *see also Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (oral complaints are encompassed by FLSA protections, even where a complainant does not specifically invoke the Act, where a reasonable employer would understand that in terms of both "content and context," the complainant was asserting their rights and making more than just a passing comment).

Mr. Brito clearly complained that he was not being paid sufficiently.  This complaint was "sufficiently clear and

detailed for a reasonable employer to understand it[.]"
*Greathouse*, 784 F.3d at 117.  During the same conversation
involving Mr. Brito's protected complaint, Defendants subjected
Mr. Brito to an adverse employment action by terminating his
employment.  (*See* Compl. ¶ 110, 237; Brito Decl. ¶ 48.)  Even
without the supplementary information provided by Mr. Brito's
declaration, the Court finds that Mr. Brito has sufficiently
alleged a causal connection between Mr. Brito's protected
complaint and the adverse employment action.  Defendants then
eventually defaulted during the course of this litigation (ECF
No. 45), and, as noted *supra*, failed to advance a non-
retaliatory reason for terminating Mr. Brito's employment.  *See*
*Morales v. Gourmet Heaven, Inc.*, No. 14-cv-01333 (VLB), 2016 WL
8254353, at *7 (D. Conn. Nov. 29, 2016) (finding that plaintiffs
were entitled to default judgment in connection with their
retaliation claims where, "[b]y virtue of [the individual
defendant's] default, [the individual defendant] has not
submitted any legitimate, nondiscriminatory reason for
terminating the employment of the Plaintiffs.").  Mr. Brito has
established liability against Defendants with regard to his FLSA
and NYLL retaliation claim.

### E. Liability as to Mr. Brito's Disability Discrimination Claims Under NYSHRL and NYCHRL[4]

---

[4] As a preliminary matter, the Court finds that Brito's claims are timely.
"In general, claims arising under the NYSHRL are subject to a three-year
statute of limitations." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-cv-

The NYSHRL, N.Y. Exec. Law § 296 *et seq.*, provides that it shall be an "unlawful discriminatory practice" for an employer, on account of an individual's disability, to "discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).  An employee does not need to exhaust administrative remedies before filing a civil action.  N.Y. Exec. Law § 297 (9).  The NYCHRL provides that it shall be an unlawful discriminatory practice for an employer to discriminate against an individual on account of their disability.  N.Y.C. Admin. Code § 8-107(1)(a).

For the reasons discussed immediately *infra*, the Court finds that Plaintiff Brito has sufficiently alleged both hostile work environment and a failure to accommodate under New York law.

### 1. Hostile Work Environment

A plaintiff raising a hostile work environment claim under the NYSHRL must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the

---

10023 (NSR), 2020 WL 2836760, at *15 (S.D.N.Y. May 31, 2020).  Claims arising under the NYCHRL are likewise subject to a three-year statute of limitations. *Klein v. City of New York*, No. 10-cv-9568 (PAE) (JLC), 2011 WL 5248169, at *9 (S.D.N.Y. Oct. 28, 2011), *report and recommendation adopted*, No. 10-cv-9568 (PAE) (JLC), 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012) (citation omitted).  In the present case, Brito began working on approximately May 5, 2017, and alleges discriminatory and retaliatory conduct from early in his employment until his firing on April 7, 2018.  Brito filed his complaint on February 12, 2019.  As such, his NYSHRL claims and Brito's NYCHRL claims are timely.

victim's employment and create an abusive working environment.'" *Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).  To determine whether a work environment is hostile, a court must look to the surrounding circumstances including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).  Like any other relevant factor, psychological harm to the employee may be taken into account, and no single factor is required.  *Id.*  Generally, incidents of harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Joseph v. HDMJ Restaurant, Inc.*, 970 F. Supp. 2d 131, 145 (E.D.N.Y. 2013) (internal quotation marks omitted). Even an isolated incident, however, can meet the threshold for hostility if it can and does independently "work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  Accordingly, a plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and

concerted' to have altered the conditions of her working environment." *Id*.

In contrast to the NYSHRL, a plaintiff can seek relief for hostile work environment under the NYCHRL without demonstrating that the harassment was severe or pervasive. *Schmitt v. City of New York*, No. 15-cv-05992, 2018 WL 5777019, at *6 (E.D.N.Y. Nov. 1, 2018) (citing *Forgione v. City of New York*, No. 11-cv-5248, 2012 WL 4049832, at *7 (E.D.N.Y. Sept. 13, 2012)).  A plaintiff states a claim under the NYCHRL for hostile work environment when he pleads that he was "treated less well than other employees because of his protected class." *Forgione v. City of New York*, 2012 WL 4049832, at *7.

Mr. Brito has alleged a sufficient hostile work environment claim under both New York State and City statutes. Mr. Brito alleged that during his employment, Individual Defendants M. Gonzalez and S. Gonzalez openly taunted and mocked him for his visual impairment and for his use of a hearing aid. (*See* Compl. ¶ 104; see also Brito Decl. ¶¶ 35-43.)  On multiple occasions, the Individual Defendants questioned Mr. Brito's ability to perform work or maintain employment because of his disabilities or "deficiencies." (*See* Compl. ¶¶ 106, 108; *see also* Brito Decl. ¶ 37.)  On several occasions, M. Gonzalez and S. Gonzalez maliciously shouted into Mr. Brito's ear to ridicule his hearing impairment. (*See* Compl. ¶ 105; *see also* Brito Decl.

¶ 39.)  Numerous times, the Individual Defendant directed verbal taunts at Mr. Brito and claimed he would never do anything about it because "no other employer would ever hire him because of his disabilities."  (*See* Compl. ¶ 106; Brito Decl. ¶ 40.) Defendants engaged in this discriminatory, humiliating, and hostile behavior throughout the duration of Mr. Brito's employment, and escalated their abuse during the last several months of his employment until it became "unbearable."  (*See* Compl. ¶ 102-103; *see also* Brito Decl. ¶¶ 35-40.)  Defendants did not subject other Bakers or Helpers without disabilities to the outright verbal abuse and bullying that Mr. Brito was subjected to.  (*See* Compl. ¶ 99; *see* Brito Decl. ¶ 41.) When Mr. Brito finally complained about the Defendants' unlawful practices, Defendants immediately terminated his employment. (*See* Compl. ¶¶ 109-10; *see also* Brito Decl. ¶¶ 43-48.)

Mr. Brito has identified, through a series of problematic and abusive instances, a pattern of cruel mistreatment at the hands of the Defendant-employers.  The mistreatment that Mr. Brito alleges was persistent, severe, "physically threatening" and "humiliating," and "unreasonably interfere[d]" with Mr. Brito's work.  *See Harris*, 510 U.S. at 23.  Mr. Brito has also sufficiently alleged that he was treated poorly by Defendant-employers due to his disabilities, and therefore, has pleaded that he was "treated less well than

other employees because of his protected class." *Forgione*, 2012
WL 4049832, at *7.  Accordingly, Mr. Brito has sufficiently
stated hostile work environment claims against Defendants under
the NYSHRL and NYCHRL.  *See Fox v. Costco Wholesale Corp.*, 918
F.3d 65, 75 (2d Cir. 2019) (plaintiff's hostile work environment
claim was sufficient where plaintiff established that
plaintiff's co-workers mocked him for months, by identifying
specific comments and instances of mockery that were
sufficiently severe and pervasive); *Salas v. N.Y.C. Dep't of
Investigation*, 298 F. Supp. 3d 676, 684-85 (S.D.N.Y. 2018)
(plaintiff sufficiently alleged a hostile work environment claim
where defendants derided plaintiff's stutter, imitated her, and
publicly intimidated her).

## 2. Failure to Accommodate

To successfully plead a case for disability
discrimination for failure to accommodate under the NYSHRL and
NYCHRL, a plaintiff must show that,

> (1) she was disabled as defined by the statutes; (2) her
> employers had notice of the disability; (3) with reasonable
> accommodation, she could perform the essential functions of
> her job, and (4) the defendants refused to make reasonable
> accommodations for her needs.

*See Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 412
(S.D.N.Y. 2014) (citing *Parker v. Columbia Pictures Indus.*, 204

F.3d 326, 332, 332 n. 1 (2d Cir.2000)).  Additionally, under the
NYSHRL and NYCHRL, an employer is required to engage in an
"interactive process" with an employee who requests an
accommodation, which "requires the employer to 'investigate an
employee's request for accommodation and determine its
feasibility.'"  *Id*. at 420 (citation omitted).  A defendant-
employer's failure to engage in an interactive process is not a
"*per se* violation of the NYCHRL, but is nonetheless an important
consideration when evaluating a failure to accommodate claim."
LeBlanc v. United Parcel Serv., No. 11-cv-6983 (KPF), 2014 WL
1407706, at *1 (S.D.N.Y. Apr. 11, 2014) (citing *Jacobsen v.
N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 988 N.Y.S.2d 86, 11
N.E.3d 159, 169 (2014)).[5]

        Mr. Brito has sufficiently alleged a failure to
accommodate claim under both New York State and City statutes.
First, as a threshold matter, Mr. Brito pleads a disability
under the NYSHRL and NYCHRL.  "Under the NYSHRL and NYCHRL, a
disability includes an impairment of normal bodily function,

---

[5] The Court respectfully notes that Plaintiffs' misstate the law as to this
limited point, and cite to *Phillips v. City of N.Y.*, 66 A.D.3d 170, 176, 884
N.Y.S.2d 369 (2009), for the erroneous proposition that "under the NYSHRL and
NYCHRL, an employer's failure to engage in the interactive process is itself
a violation of the law." *Id.*; *see Reyes v. Phoenix Beverages, Inc.*, 207 F.
Supp. 3d 206, 231 (E.D.N.Y. 2016) (citing *Jacobsen v. N.Y.C. Health & Hosps.
Corp.*, 22 N.Y.3d 824, 988 N.Y.S.2d 86, 11 N.E.3d 159, 169 (2014)) (noting
that *Phillips* been overruled by more recent New York Court of Appeals
authority, and that the court in *Jacobsen* rejected the decision in Phillips
to the extent that it implied that a good faith interactive process is an
independent element of the disability discrimination analysis under the
NYCHRL.)).

[NYSHRL] § 292(21), or an impairment of any system of the body,
[NYCHRL] § 8-102(16)(a)-(b) or a record of such impairment."
*Katz v. Adecco USA, Inc.*, 845 F. Supp. 2d 539, 548 (S.D.N.Y.
2012).  Mr. Brito has sufficiently alleged that he suffered an
injury that left him permanently blind in his right eye and
caused him to suffer increased temperature sensitivity,
requiring him to take additional steps to protect his eye
particularly when working around the ovens.  (*See* Compl. ¶¶ 82,
84; Brito Decl. ¶ 25).  Second, Mr. Brito put the Defendants on
notice of his disabilities, and requested "a reasonable
accommodation" in the form of protective eyewear to use while
operating the ovens as part of his job duties. (Compl. ¶¶ 84-86;
Brito Decl. ¶¶ 27-28.)  The requested protective goggles cost
approximately $80 to $100, which Mr. Brito could not afford to
buy himself. (Compl. ¶ 88.)  Mr. Brito specifically explained to
Defendants that the hot temperature of the oven caused him
severe pain due to his eye related disability, but Defendants
denies his request for protective eyewear, without engaging in
an interactive process. (Compl. ¶ 87; Brito Decl. ¶ 27.)  Third,
Mr. Brito continued to perform his job duties as a Baker and
Helper and was a consistently strong performer, but could have
performed his job duties *painlessly* with reasonable
accommodation. (Compl. ¶¶ 54-55, 93-94, 96.)  Fourth and

finally, Defendants refused to provide any protective gear for Mr. Brito, or any other reasonable accommodations. (*Id.* ¶ 89.) Additionally, Defendants failed to engage in an interactive process with Mr. Brito or consider alternatives to the reasonable accommodation Mr. Brito requested. (*Id.* ¶ 92.) Having been denied protective goggles, Mr. Brito asked if he could instead be relieved of the tasks involving the use of the oven. (Compl. ¶ 90; Brito Decl. ¶ 30.)  Though using the oven was only a small portion of Mr. Brito's job and working with the oven could have been performed by the other six Bakers and Helpers that worked with Mr. Brito, Defendants denied Mr. Brito's request without engaging in any interactive process. (Compl. ¶¶ 90-92; Brito Decl. ¶¶ 30-32.)  The Court finds that Mr. Brito sufficiently alleged failure to accommodate claims under the NYSHRL and NYCHRL. *See Limauro v. Consol. Edison Co. of N.Y., Inc.*, No. 20-cv-03558 (CM), 2021 WL 466952, at *9 (S.D.N.Y. Feb. 9, 2021) (allegations sufficient where defendant rejected plaintiff's accommodation request and did not engage in an "interactive dialogue" about alternative accommodations they can provide).

**V.   Damages**

Plaintiffs have sufficiently alleged liability as to each of their claims, and the Court next examines Plaintiffs' requested damages, based on the supporting declarations and

evidence presented.  *See Am. Jewish Comm. v. Berman*, No. 15-cv-
5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15,
2016) (internal citation omitted) (where the damages are "not
susceptible to simple mathematical calculation, Federal Rule of
Civil Procedure 55(b)(2) gives courts discretion to determine
whether an evidentiary hearing is necessary or whether to rely
on detailed affidavits or documentary evidence.").  Plaintiffs
seek a total of $1,169,831.55, in damages.

### a. Compensatory Damages

#### i. Defendants' Failure to Pay Wages, Overtime Compensation, and Spread of Hours Claims

Plaintiffs seek a total of $58,389.85 in unpaid
minimum and overtime wages, and $8,944.50 in unpaid
spread of hours pay, for a total of $67,334.35 in actual
economic damages.

Plaintiffs support their request for damages through
the complaint, their individual declarations, and supporting
evidence in Mr. Brito's diligently documented planner (ECF No.
51-1, Brito Planner), and a thorough and comprehensible damages
spreadsheet of damages calculations.  (ECF No. 50-7, Ex. G,
Spreadsheet of Plaintiffs' Damages Calculations.)  As Defendants
did not keep time records, the Court finds Plaintiffs'
complaint, individual declarations, and supporting evidence to
be sufficient bases upon which to establish compensatory, wage-

related damages. *See* 29 U.S.C. § 211(c); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6 (both federal and New York law provide that employers are required to make, keep and preserve records of employee wages, hours, and employment conditions.); *see also Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y.2011) (citing the federal and state statutes, and noting "[i]f an employer fails to keep such records, [a] plaintiff may meet his burden by producing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" (quoting *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003)).  Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Gonzalez v. Masters Health Food Service Inc.*, No. 14-cv-7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting Kuebel, 643 F.3d at 362); *see also Hosking v. New World Mortgage, Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (noting "that the employee's burden of proving damages under the FLSA is minimal, particularly when the employer does not keep records").  Defendants have defaulted, and failed to come forward with any evidence negating the reasonableness of the inference to be drawn from Plaintiffs' evidence.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036, 1047, 194 L. Ed. 2d 124 (2016).  Defendants

have also not met the more stringent standard for overcoming their failure to keep records under the NYLL.  Under the NYLL framework, "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting N.Y. Lab. Law § 196-a(a)), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).  As described below, relying on Plaintiffs' evidence and the Court's corroborating calculations, the Court awards Plaintiffs damages for $58,378.11 in unpaid minimum and overtime wages, and $8,943.75 in unpaid spread of hours pay, for a total of $67,321.86 in actual economic damages for unpaid wages.

Both the FLSA and the NYLL require New York employers to pay their employees at least the respective federal, state, or city minimum wage, whichever is higher, for every hour worked.  *See* FLSA § 206(a) and NYLL § 652(1)).  Plaintiffs may recover under the greater of either the applicable New York State or City minimum wage or the federal minimum wage.  *See* FLSA § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter[.]").

Plaintiffs are therefore entitled at all relevant times to recover payment of wages at the applicable New York State minimum wage levels, which provide minimum wage rates for New York City,[6] under which the Defendants were required to pay Plaintiffs at hourly rates of at least $8.75 in 2015, $9.00 in 2016, $11.00 in 2017; and $13.00 in 2018. *See* 12 NYCRR § 146-1.2; NYLL § 652(1).[7]

In addition to wages of at least the statutorily applicable minimum wage, Defendants were required—and failed—to pay Plaintiffs overtime at a rate of one and one-half times the applicable minimum wage for all hours worked in excess of 40 hours in a workweek.  Under both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate. See FLSA, 29 U.S.C. § 207(a); 12 NYCRR § 146-1.4; 12 NYCRR § 142-2.2 (New York overtime rate at a wage rate of one and one-half times the

---

[6] As noted by the Court *supra*, at all relevant times to the complaint, the two locations of Marina's Bakery were in New York City and employed 11 or more individuals. (*See* ECF No. 50-2, Ex. B, Defendants' list of 52 employees); Compl. ¶ 33 (30 to 40 employees at all relevant times); Brito Decl. ¶¶ 3-4; Bonilla Decl. ¶¶ 3-4; Cardona Decl. ¶¶ 3-4.) Additionally, Marina's Bakery was, at all times relevant to the complaint, a restaurant that "prepare[d] and offer[ed] food [and] beverage for human consumption . . . on . . . its premises ..." 12 New York Codes, Rules and Regulations ("NYCRR") § 146-3.1(b). Accordingly, Defendants were at all times required to pay Plaintiffs at the applicable minimum wage rates for large employers under the NYCRR Minimum Wage Orders. *See id.* § 146-1.1(a).
[7] The applicable New York State-mandated minimum wage rates for New York City large employers, including effective dates, were: $8.75 per hour on and after December 31, 2014; $9.00 per hour on and after December 31, 2015; $11.00 per hour on and after December 31, 2017; and, $15.00 per hour on and after December 31, 2018.

employee's regular rate)).  Where a plaintiff is "compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate." *Guardado*, 2016 WL 7480358, at *10; *Fermin*, 93 F. Supp. 3d at 44-45, 49-51 (overtime damages are 1.5 times the New York State minimum wage rate).  Here, Plaintiffs categorically worked more than 40 hours per week, and are therefore entitled to compensation at a rate of one and one-half times the applicable minimum wage for those weekly hours exceeding 40 hours. (*See* Compl. ¶ 35; Brito Decl. ¶¶ 13-17; Brito Planner; Bonilla Decl. ¶ 11-15; Cardona Decl. ¶ 10-14.)

Lastly, Plaintiffs were entitled to, and Defendants failed to pay them, spread of hours compensation.  "The NYLL spread-of-hours claim, for which there is no counterpart under the FLSA, provides that 'an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours.'" *Fermin*, 93 F. Supp. 3d at 45 (citation omitted).  Here, Plaintiffs always worked in excess of 10 hours per day, and they are entitled to corresponding spread of hours pay. (Compl. ¶ 71; Ex. F; Brito Decl. ¶ 18; Brito Planner; Bonilla Decl. ¶ 16; Cardona Decl. ¶ 15.)

Plaintiffs' declarations provide detailed testimony about their hours worked, including specific examples of specific hours worked for particular weeks, from which their requested damages can be adequately determined.  (Brito Decl. ¶¶ 13-16; Bonilla Decl. ¶¶ 11, 14; Cardona Decl. ¶¶ 10, 13.) Further, Plaintiffs have submitted contemporaneous documentary evidence from Mr. Brito's day planner, which confirms Mr. Brito's exact hours worked.  (ECF No. 51-1, Brito Planner.) Accordingly, Plaintiffs have submitted sufficient evidence to show the amount and extent of their work, and the amount of the corresponding award may be "reasonably inferred."  *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997); *see Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit . . . that it is possible for a plaintiff to meet [the burden of establishing the amount and extent of the work] through estimates based on his own recollection."). Since Defendants have no records to dispute Plaintiffs' estimates and recollections, Plaintiffs are entitled to a presumption that their testimony and records are accurate.

As provided in Plaintiffs' supporting declarations and in Mr. Brito's detailed planner, Mr. Brito worked for Defendants for 337 days, from May 5, 2017, to April 7, 2018; Ms. Bonilla worked 383 days from December 29, 2015, to January 15, 2017;

and, Ms. Cardona worked approximately 272 days, from November 2015, through July 31, 2016. (Brito Decl. ¶ 2; Bonilla Decl. ¶ 2; Cardona Decl. ¶ 2.) The applicable hourly minimum wage rates were $8.75 in 2015; $9.00 in 2016; $11.00 in 2017; and, $13.00 in 2018. *See id.* § 146-1.2; NYLL § 652(1).

For the 22-week period from May 5, 2017, to October 6, 2017, Mr. Brito was compensated by Defendants at a rate of $80 per day, but should have been compensated under New York State law at a rate of $11.00 per hour, and an overtime rate of $16.50 per hour ($11.00 times 1.5 = $16.5). For the 26-week period from October 6, 2017, to April 7, 2018, Mr. Brito was compensated at a rate of $100 per day, and during 2017, should have been compensated at a rate of $11.00 per hour, and at an overtime rate of $16.50 per hour ($11.00 times 1.5 = $16.5). During 2018, Mr. Brito should have been compensated at a rate of $13.00 per hour, and an overtime rate of $19.5 per hour ($13.00 times 1.5 = $19.5). Mr. Brito's exact days worked per week and total hours worked per week were meticulously tracked and recorded by Mr. Brito. (Brito Decl. ¶ 20; ECF No. 51-1, Brito Planner; see also ECF No. 50-7, Ex. G, Spreadsheet of Plaintiffs' Damages Calculations, p. 4, Brito's Wage Damages.) The Court has conducted its own independent calculations based on Mr. Brito's represented number of hours worked, as represented in Mr. Brito's planner, which reflect the start and

end times for all of Mr. Brito's shifts during his employment
with Defendants.  (Brito Decl. ¶ 20.)  Based on this
information, Mr. Brito is owed $22,575.50 in regular wages at
the statutorily required minimum wage rates under New York law
from May 5, 2017, to April 7, 2018.  Mr. Brito is owed
$28,537.85 in overtime wages for the period from May 5, 2017, to
April 7, 2018.  Consistent with the Plaintiffs' wage
calculations, this reflects a total of $51,113.35 in wages and
overtime wages due to Mr. Brito. (ECF No. 50-7, Spreadsheet of
Plaintiffs' Damages Calculations, p. 4.)  Further, under the
NYLL, Mr. Brito is entitled to recover "compensation for an
extra hour of work at the minimum wage for each day that the
employee works in excess of ten hours.'" *Fermin*, 93 F. Supp. 3d
at 45 (citation omitted).  Mr. Brito always worked shifts in
excess of ten hours.  (Brito ¶ 18.)  Accordingly, and consistent
with the Plaintiffs' wage calculations, using a minimum wage of
$11.00 per hour for 2017, and $13.00 per hour for 2018, Mr.
Brito was owed spread of hours wages totaling $3,245.00 from May
5, 2017, to April 7, 2018.  In total, Mr. Brito should have been
paid a total of $54,358.35 ($51,113.35 in minimum wages and
overtime wages, plus $3,245.00 in spread of hours wages) from
May 5, 2017, to April 7, 2018.  Mr. Brito was only paid a total
of $25,620.00 by Defendants during that period.  Based on the
Plaintiffs' calculations and the Court's independent

54

calculation, Mr. Brito is owed $22,575.50 in minimum wages, $28,537.85 in overtime wages, and $3,245 in spread of hours wages. Accordingly, for the entire period of his employment, Mr. Brito is awarded damages for unpaid wages of $28,738.35 ($54,358.35 total wages owed minus $25,620.00 wages paid).

Ms. Bonilla worked at Marina's Bakery for an approximately 55-week period from December 29, 2015, through January 15, 2017, where she was always paid $80 per day. (Cardona ¶ 2.)  The applicable hourly minimum wage rates under New York State law were $8.75 in 2015; $9.00 in 2016; $11.00 in 2017; and, $13.00 in 2018. *See id.* § 146-1.2; NYLL § 652(1). Ms. Bonilla affirmed in her declaration that, throughout her employment, she worked "six to seven days per week, approximately 11 to 12 hours per day, for a total of approximately 66 to 84 hours per week."  (Bonilla ¶ 11.) Plaintiffs calculate Ms. Bonilla's wages using the middle point in these ranges (6.5 days a week, and 75 hours per week), for the period from December 29, 2015 through January 2017, where she was always paid $80 per day.  (Bonilla ¶¶ 12, 14.)

The Court notes that Plaintiffs have not represented or included in their calculations a specific breakdown of the two weeks during Bonilla's employment during which the minimum

wage rate changed under New York law.[8]  First, the Court notes
that the New York City statutory minimum wage changed, though
marginally, from $8.75 per hour to $9.00 per hour during the
first week of Ms. Bonilla's employment.  For the two-day time
period from December 29, 2015, to December 30, 2015, Ms. Bonilla
should have been compensated at a statutory rate of $8.75 per
hour (with an overtime rate of $13.13 per hour).  *See* NYCRR §
142-3.1, Basic minimum hourly wage rate.  For the remainder and
majority of the time period that week from the four-day period
from December 31, 2015, to January 3, 2016, Ms. Bonilla should
have been compensated at a statutory rate of $9.00 per hour
(with an overtime rate of $13.5 per hour).  *Id.*  It is therefore
not precise for the entire week to be calculated at a rate of
$9.00 per hour.  Second, Plaintiffs' damages spreadsheet
reflects that the week from Monday, December 26, 2016, to
January 1, 2017, was apparently calculated at a minimum wage
rate of $11.00 per hour.  It is likewise not precise for the
entire week to be calculated at a rate of $11.00 minimum wage,
as that was the minimum wage from December 26, 2016 through

---

[8] Plaintiffs' calculated the "week ending on Sunday, January 3, 2016," for Ms.
Bonilla using a rate of $11.00 minimum wage. The week ending on Sunday,
January 3, 2016, is the week from Monday, December 28, 2015, through Sunday,
January 3, 2016. The applicable New York City minimum wage rate changed mid-
week, from $8.75 per hour to $9.00 per hour on and after December 31, 2015.
Plaintiffs similarly calculated the "week ending on Sunday, January 1, 2017"
using the increased minimum wage rate of $11.00 per hour. The applicable,
statutory minimum wage rate for the week from Monday, December 26, 2016, to
Sunday, January 1, 2017, changed from $9.00 per hour to $11.00 per hour on
and after December 31, 2016.

December 30, 2016. *See* NYCRR § 142-3.1, Basic minimum hourly wage rate (indicating that the minimum wage in New York City for large employers was $11.00 per hour on and after December 31, 2016).

The Court has performed its own calculations for the two weeks of Ms. Bonilla's employment, between December 28, 2015-January 3, 2016, and between December 26, 2016-January 1, 2017.[9] Ultimately, using these approximate values at the precise statutory minimum wage rates, the Court finds that the difference between Plaintiffs' calculations and the Court's independent calculations are ultimately *de minimis*.  Indeed, using the Court's approximations for Ms. Bonilla's first week of work, Ms. Bonilla would be owed $425.14 in unpaid wages, as opposed to the lesser $371.00 in damages for unpaid wages that Plaintiffs currently seek for that week of Ms. Bonilla's work.

---

[9] The Court calculated Ms. Bonilla's first week of work at a statutory minimum wage rate as follows: for Monday, December 28-December 30, 2015, 40 hours per week of work divided by 6.5 days worked per week, to arrive at 6.15 hours per day.  This same formula was used for the remainder of the week, Thursday, December 31 to January 3, 2016. For Ms. Bonilla's overtime, from Monday, December 28-December 20, 2015, 35 hours of overtime worked were divided by 6.5 days worked per week, to arrive at approximately 5.4 hours of overtime work per day. This same formula was used for the remainder of the week, Thursday, December 31 to January 3, 2016. Spread of hours was derived by assuming 3 days at a rate of $8.75 statutory minimum wage and 3.5 days at a $9.00 rate. The results for these two weeks are noted below.
**Bonilla Week 1** ("week ending Sunday, January 3, 2016"):
6.15 x $8.75 x 3 days = $161.44 (wages owed)
5.4 x $13.13 x 3 days = $212.71 (overtime wages owed)
6.15 x $9.00 x 4 days = $221.4 (wages owed)
5.4 x $13.5 x 4 days = $291.6 (overtime wages owed)
Total minimum wages owed: $382.84; overtime wages owed: $504.31; spread of hours wages owed: $58; total wages owed: $949.65; unpaid wages: $425.15.

(ECF No. 50-7, Spreadsheet of Plaintiffs' Damages Calculations,
p. 5.)  Accordingly, given that Plaintiffs' own calculations are
supported by admissible evidence and there is insufficient
evidence to determine an exact allocation of Ms. Bonilla's hours
across a week of work, the Court will accept, in its discretion,
Plaintiffs' calculations for Ms. Bonilla's first week of work.
*See Gamero*, 752 F. App'x 33, 36 (2d Cir. 2018) (citing *Kuebel v.
Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011))
(approximation as to Plaintiffs' time worked and resulting wages
is acceptable where there is insufficient evidence to make more
specific findings)).

   The Court also conducted its own calculation, using
the same methodology, as to the "week ending Sunday, January 1,
2017" ("Bonilla Week 2") when the New York State and City
minimum wage rate was increased from $9.00 per hour to $11.00
per hour.[10]  Here, using the Court's approximations for Bonilla
Week 2, Ms. Bonilla would be owed $497.25 in unpaid wages, as
opposed to the $569 in damages for unpaid wages that Plaintiffs
currently seek for that week of Ms. Bonilla's work. (ECF No. 50-
7, Spreadsheet of Plaintiffs' Damages Calculations, p. 5.)  The

---

[10] **Bonilla Week 2:** December 26, 2016–January 1, 2017
6.15 x $9.00 x 5 days = $276.75 (wages owed)
5.4 x $13.5 x 5 days = $364.5 (overtime wages owed)
6.15 x $11.00 x 2 days = $135.3 (wages owed)
5.4 x $16.5 x 2 days = $178.2 (overtime wages owed)
Total minimum wages owed: $412.05; overtime wages owed: $542.07; spread of
hours wages owed: $62.5; total wages owed: $1017.25; unpaid wages: $497.25.

Court has likewise determined that, for Bonilla Week 2, the application of the more precise calculations, which are still based on approximations and assumptions, to the larger damages calculations would create a *de minimis* difference.[11]  Given the evidence that Ms. Bonilla was able to proffer and given the insufficient evidence making it impractical and impossible for the Court to make a precise calculation, the Court will accept the Plaintiffs' calculation for Ms. Bonilla's wage damages.  *See Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997) (when an employee has offered evidence to permit an inference of improper compensation and the employer cannot come forward with evidence of the precise amount of work performed, the court may award damages, even if they are approximate). Accordingly, based on the Plaintiffs' calculations and the Court's independent confirmation, Ms. Bonilla is owed $20,040.00 in minimum wages, $26,302.50 in overtime wages, and $3247.50 in spread of hours wages. For the entire period of Ms. Bonilla's employment, the Court awards Ms. Bonilla $20,999.00 in damages for unpaid wages, representing $49,599.00 in total wages owed minus $28,600 in wages actually paid.

---

[11] Plaintiffs seek $20,999 in damages for unpaid wages to Ms. Bonilla—this number would change to $20,927.25, using the Court's approximate calculations. (ECF No. 5-7, Spreadsheet of Plaintiffs' Damages Calculations, p. 5.)

Ms. Cardona worked for Defendants from November 2015 through July 2016.  (Bonilla Decl. ¶ 2.)  The applicable hourly minimum wage rates under New York State and City law were $8.75 in 2015; $9.00 in 2016; $11.00 in 2017; and, $13.00 in 2018. *See id.* § 146-1.2; NYLL § 652(1).  Unfortunately, as is the case with Ms. Bonilla, Plaintiffs have failed to account to precisely for the "week ending January 3, 2016," for Ms. Cardona, during which the applicable minimum wage changed.  *See id.* § 146-1.2. Unlike Ms. Bonilla, however, Ms. Cardona has provided exact times for her work schedule, leaving no need or reason for approximation.  A stated in Ms. Cardona's declaration, she worked "seven days a week from 8:00 a.m. to 8:00 p.m., for a total of 84 hours per week." (Cardona Decl. ¶ 10.) The Court has performed its own calculations for Ms. Cardona's wages for the "week ending Sunday, January 3, 2016[,]" during which the applicable New York City minimum wage changed.[12]  In Ms. Cardona's case, there is "[sufficient] evidence to make more specific findings[,]" and an approximation would be inappropriate. *Kuebel*, 643 F.3d at 362.  Plaintiffs failed to provide a precise, accurate computation for Ms. Cardona where

---

[12] **Cardona Week 1:** December 28, 2015-January 3, 2016
5.7 x $8.75 x 3 days = $149.63 (wages owed)
6.29 x $13.13 x 3 days = $247.77 (overtime wages owed)
5.7 x $9.00 x 4 days = $205.2 (wages owed)
6.29 x $13.5 x 4 days = $339.66 (overtime wages owed)
Total minimum wages owed: $354.83; overtime wages owed: 587.43; spread of hours wages owed: $62.25; total wages owed: $1004.51; unpaid wages: $444.51.

one was possible, and the Court will substitute its own
calculations and damage totals for the Plaintiffs' as to Ms.
Cardona.

Accordingly, the Court finds that during Ms. Cardona's
entire period of employment, she was owed minimum wages in the
amount of $13,954.83; overtime wages in the amount of
$23,027.43; and, spread of hours wages in the amount of
$2442.25.  The Court awards Ms. Cardona $17,584.51 total damages
for unpaid wages.[13]

### ii. Late Pay Damages

Plaintiffs are entitled to damages for Defendants'
failure to timely pay them their wages.  Under both the FLSA and
the NYLL, employees are entitled to damages equal to the wages
that were paid late. *Coley v. Vannguard Urban Improvement Ass'n,
Inc.,* No. 12-cv-5565 (PKC)(RER), 2018 WL 1513628, at *13
(E.D.N.Y. Mar. 27, 2018).

Here, as established *supra*, Defendants conceded that
the Plaintiffs had weekly pay periods and that Mondays were the
"regularly scheduled pay days." (Answer ¶¶ 44, 74.)  Defendants
failed to comply with their own pay schedules and failed to pay
Plaintiffs on their regularly scheduled pay days at least half
of all pay days, and sometimes withheld wages for multiple

---

[13] This total consists of the total $39,424.51 wages Ms. Cardona was owed
minus the $21,840.00 that she was paid.

weeks. (Brito Decl. ¶¶ 21-22; Bonilla Decl. ¶ 18; Cardona Decl. ¶ 17.)  Based on the record, therefore, there is no question that Plaintiffs are entitled to damages equal to the actual amount of wages that were paid late.  As the Court has awarded Plaintiffs wage damages under the NYLL, and as Plaintiffs have failed to specify under which statute they seek to recover, the Court will award late pay damages under the NYLL.  *See Thompson v. Hyun Suk Park*, No. 18-cv-0006(AMD)(ST), 2020 WL 5822455, at *7 (E.D.N.Y. Sept. 1, 2020), *report and recommendation adopted*, No. 18-cv-00006(AMD)(ST), 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020) (where plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award damages under the statute providing the greatest amount of relief) (quotation omitted).  The Court agrees with and adopts Plaintiffs' calculations of late pay damages, which reflect that Plaintiffs were not paid timely during at least half of all scheduled pay days, and reflect that Plaintiffs' $80 daily payments and Mr. Brito's eventual raise to $100 daily.  (Brito Decl. ¶¶ 14, 21-22; Bonilla Decl. ¶¶ 12, 18; Cardona Decl. ¶¶ 13, 17.)  The Court awards Plaintiffs $38,760.00 in damages for late payment of wages.  This total consists of $13,000.00 late pay wages for Mr. Brito, $14,560.00 late pay wages for Ms. Bonilla, and $11,200.00 late pay wages for Ms. Cardona.

### iii. **Wage Notice and Wage Statement Violations**

Plaintiffs seek, and the Court grants, $30,000 in statutory damages for Defendants' failure to furnish them with Notices of Pay Rate (NYLL § 195(1)(a)) and wage statements (NYLL § 195(3)).  Pursuant to NYLL § 195(1)(a), Defendants must furnish Plaintiffs with Notices of Pay Rate containing their hourly rate, overtime rate, and other pertinent information, which, as discussed in detail *supra*, Defendants failed to do. NYLL § 195(1)(a).  For an employer's failure to provide wage notice at the time of hiring, an employee may recover $50 each workday, not to exceed $5,000. N.Y. Lab. Law § 198(1-b).  For employer's failure to provide wage statements, an employee may recover $250 each workday, not to exceed $5,000. N.Y. Labor Law § 198(1-d).

Here, Plaintiffs' statutory recovery is straightforward.  Each of the Plaintiffs worked for Defendants far longer than 20 or 100 days, without ever receiving Notices of Pay Rate or wage statements. (Brito Decl. ¶¶ 2, 8; Bonilla Decl. ¶¶ 2, 13; Cardona Decl. ¶¶ 2, 12.)  Accordingly, each Plaintiff is entitled to the statutory maximum of $5,000 for Defendants' failure to furnish them with Notices of Pay Rate, and $5,000 for Defendants' failure to provide them with wage statements. *See* NYLL §§ 198(1-d), (1-b). Plaintiffs are entitled to and awarded a total of $30,000 in statutory damages for

63

Defendants' violations of both NYLL § 195(a)(1) and NYLL § 195(3).

### b. Liquidated Damages and Prejudgment Interest
### i. Liquidated Damages

In addition to compensatory damages for Defendants' failure to pay wages as required by law, Plaintiffs seek liquidated damages. (ECF No. 49, Pl. Mem., p. 42.)  Though it is not clear under which statute the Plaintiffs seek to recover, both the NYLL and the FLSA allow for liquidated damages, and for the same quantity.  The NYLL allows an employee to recover "liquidated damages equal to one hundred percent of the total amount of wages found to be due," unless the employer proves "a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law §§ 198(1-a), 663(1). "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).

Here, Defendants have abandoned the instant action, and thus have not demonstrated a "good faith" basis for believing the underpayment of wages was lawful, as the NYLL requires to prevent the imposition of liquidated damages. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No.14-cv-1695, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (citing *Blue v.*

64

*Finest Guard Servs. Inc.*, No. 09-cv-133(ARR), 2010 WL 2927398, at *11 (finding that a defendant's default may suffice to support a claim for liquidated damages). Further, as described *supra*, Plaintiffs have alleged that defendants' NYLL and FLSA violations were willful.

Though Plaintiffs have failed to specify under which statute they intend to recover, the Court will award liquidated damages under the NYLL. *See Morales v. Mw Bronx, Inc.*, No. 15-cv-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016) (prejudgment interest is compensatory in nature and is not available where a plaintiff successfully claims liquidated damages under the FLSA, because the plaintiff would be considered to have been appropriately compensated through the award of liquidated damages). Accordingly, Plaintiffs are awarded liquidated damages equal to one hundred percent of their total wages owed, or $67,321.86. This total consists of $28,738.35 unpaid wages for Mr. Brito, $20,999.00 in unpaid wages for Ms. Bonilla, and $17,584.51 un unpaid wages for Ms. Cardona.

### ii. Prejudgment Interest

Plaintiffs seek prejudgment interest at the rate provided by the NYLL. (ECF No. 49, Pl. Mem., p. 46.) Prejudgment interest is not available where a Plaintiff successfully obtains liquidated damages under the FLSA, as the

plaintiff is considered to have been appropriately compensated through the award of liquidated damages. *See Morales*, 2016 WL 4084159, at *10; *Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)).  Here, though Plaintiffs have not specified under which statute they intend to recover liquidated damages, the Court has awarded liquidated damages under the NYLL. Accordingly, Plaintiffs may appropriately seek prejudgment interest.

Plaintiffs are entitled to prejudgment interest on their actual unpaid wages at a rate of 9% per year. *See* NYLL § 198(1-a) (where an employee prevails on a wage claim, "the court shall allow such employee to recover the full amount of . . . prejudgment interest as required under the civil practice law and rules[.]"); *see also* New York Civil Practice Law and Rules ("CPLR") § 5004 ("Interest shall be at the rate of nine per centum per annum[.]").  In compliance with CPLR § 5001(b), Plaintiffs have calculated prejudgment interest to start accruing from the midpoint of each Plaintiffs' employment: (1) Mr. Brito's prejudgment interest was calculated from October 20, 2017, the midpoint between his start date of May 5, 2017 and April 7, 2018, the last day of his employment; (2) Ms. Bonilla's prejudgment interest was likewise calculated from July 7, 2016,

the midpoint of her employment; (3) Ms. Cardona's prejudgment interest was likewise calculated from her midpoint employment date of March 17, 2016. *See Zeng Liu v. Jen Chu Fashion Corp.*, No. 00-cv-4221 (RJH) (AJP), 2004 WL 33412, at *5 (S.D.N.Y. Jan. 7, 2004) ("the midpoint of the accrual of damages for each plaintiff to calculate interest," which courts have found to be an "acceptable [ ] methodology" to compute interest). Plaintiffs applied interest at a daily rate of 0.02466%, which is equivalent to the annual rate of 9% authorized by CPLR § 5004, divided by 365 days.  The Court does not adopt Plaintiffs' interest calculations, as they appear to be based on incorrect wages (*e.g.*, Mr. Brito's prejudgment interest was calculated using "principal wages owed" in the amount of $20,999.00, but as established *supra*, Mr. Brito's principal wages owed actually total $28,738.35).

The Court has calculated[14] Plaintiffs' prejudgment interest as follows:

| Prejudgment Interest Calculation | Brito | Bonilla | Cardona |
|---|---|---|---|
| Midpoint | 10/20/2017 | 7/7/2016 | 3/17/2016 |

---

[14] Using Mr. Brito's numbers as an example, the Court's calculation employed the following methodology: converting percentage into a decimal= 0.09 per year. Next, converting time into years for simplicity, 1616 days / 365 days/year = 4.427397 years. Then, solving the equation for principal plus interest (A): A = 28728(1 + (0.09 × 4.427397)) = 40175.12349144. Accordingly, A = $40,175.12. The total amount accrued, principal plus interest, from simple interest on a principal of $28,728.00 at a rate of 9% per year for 4.427397 years (1616 days) is $40,175.12. Interest equals principal plus interest, therefore interest equals $40,175.12 minus the principal ($28,738.35), which equals $11,447.12.

| Current Date | 3/24/2022 | 3/24/2022 | 3/24/2022 |
|---|---|---|---|
| Days of Interest | 1616 | 2086 | 2198 |
| Principal Wages Owed | $28,738.35 | $20,999.00 | $17,584.51 |
| Rate | 9% annually | 9% annually | 9% annually |
| **Total Interest Owed** | **$11,447.12** | **$10,800.96** | **$9,530.32** |

The Court awards Plaintiffs prejudgment interest on their actual unpaid wages, a total of $31,778.4.

### c. Mr. Brito's Retaliation and Discrimination Damages

Plaintiffs seek a total of $853,001.20 in total damages as to Brito's FLSA and NYLL retaliation claims and his NYSHRL and NYCHRL discrimination claims. As Plaintiffs' correctly note in their memorandum of law (ECF No. 49, Pl. Mem.), in connection with both Brito's retaliation and discrimination claims under the FLSA, NYLL, NYSHRL, and NYCHRL, Mr. Brito may recover: (1) back pay; (2) prejudgment interest on back pay; (3) liquidated damages on back pay; (4) front pay; (5) emotional distress; (6) punitive damages; (7) attorneys' fees and costs; and (8) post-judgment interest. *See* FLSA § 216(b); NYLL § 215(2)(a); NYSHRL § 297(9); NYCHRL § 8-502(a).  For the reasons stated below, the Court grants Mr. Brito's requested Retaliation and Discrimination damages.

Based on Mr. Brito's declaration and planner, as the Court previously noted, default judgment is clearly warranted against Defendants for Mr. Brito's retaliation and

68

discrimination claims, and Plaintiffs have successfully established liability. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 90 (E.D.N.Y. 2020) (citations omitted) ("Allegations of liability are deemed admitted upon default; allegations of damages are not.") As a threshold matter, the Court finds that it may appropriately consider Mr. Brito's detailed sworn declaration and planner to demonstrate his requested retaliation and discrimination damages.

### i. Back Pay Damages

Violations of "NYSHRL, and NYCHRL entitle a plaintiff to compensatory damages for pecuniary loss as well as pain and suffering." *Moore v. Houlihan's Restaurant, Inc.*, No. 07 Civ. 3129(ENV)(RER), 2011 WL 2470023, at *4 (E.D.N.Y. May 10, 2011). "Victims of employment discrimination are entitled to reasonable damages that would make the plaintiff 'whole for injuries suffered on account of unlawful employment discrimination.' " *Id.* (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1988)). Under the NYSHRL, and the NYCHRL, a plaintiff is generally, but not automatically, entitled to an award of back pay from the date of termination to the date of the judgment. *Antoine*, 489 F. Supp. 3d at 92 (E.D.N.Y. 2020) *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09-CV-5378, 2011 WL 4549412, at *3 (S.D.N.Y. Sept. 27, 2011).

The Court finds that Mr. Brito may recover back pay for both his retaliation and discrimination claims "from the date of termination to the date of the judgment." *Antoine*, 489 F. Supp. 3d at 92; *DeCurtis*, 2011 WL 4549412, at *3. Defendants unlawfully terminated Mr. Brito approximately 206 weeks ago, on April 7, 2018. (*See* Compl. ¶¶ 108-10; *see also* Brito Decl. ¶¶ 43-48.) Mr. Brito worked an average of approximately 75 hours per week. (*See* Compl. ¶ 57; ECF No. 51-1, Planner.)  Mr. Brito also mitigated a portion of his lost wages by collecting unemployment benefits (totaling $4,273.25) and then obtaining alternate employment at Mad Dog & Beans Mexican Cantina ("Mad Dog"). (Brito Decl. ¶¶ 49-51.) Mr. Brito earned a total of $28,714.29 from Mad Dog before being terminated at the beginning of the COVID-19 pandemic on March 15, 2020. (*Id.* ¶ 52.) Plaintiffs calculate that "[b]ased on the applicable minimum wage, Mr. Brito's average weekly lost wages amount to $1,125.00, for a total of $184,500 in lost wages[,]" and provide the formula used in the calculation for a total of $184,500 total lost wages and $151,512.46 in total back pay. (ECF No. 49, Def. Mem., p. 48.)  The Court agrees with the formula, but disagrees with the numbers used, as Plaintiffs use the incorrect statutory minimum wage applicable at the time of Mr. Brito's termination, and also fail to take into account that the statutory minimum wage changed after Mr. Brito was terminated. *See* 12 N.Y.C.R.R. §

146-1.2.  The Court has performed its own calculations, taking
into account the appropriate minimum wage rates, the applicable
change in statutory minimum wage, and Mr. Brito's mitigation,
and finds and awards Mr. Brito total back pay damages in the
amount of $188,187.46.[15]

### ii. Prejudgment Interest on Back Pay

The Court also awards Mr. Brito's requested
prejudgment interest on his back pay damages.  *See Shannon v.
Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 230 (S.D.N.Y.
2001) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir.
1998)) ("While the decision to award prejudgment interest is
left to the discretion of the district courts, the Second
Circuit has stated that '[t]o the extent ... that damages
awarded to the plaintiff represent compensation for lost wages,
it is ordinarily an abuse of discretion not to include
prejudgment interest.'").  Though "judgments that are based on
both state and federal law with respect to which no distinction

---

[15] The Court calculates Mr. Brito's back pay damages as follows:
- For the time period from April 7, 2018 (termination), to December 30, 2018 (date before minimum wage changed): 75hrs x $13 = $975 (weekly lost wages) . . . $975 x 33 wks = $32,175.00 (total lost wages)
- For the time period from December 31, 2018, to the present day: 75hrs x $15 = $1,125 (weekly lost wages) . . . $1,125 x 168 wks = $189,000 (total lost wages)
- Total damages combined: $221,175.00
- $4,273.25 + $28,714.29 = $32,987.54 (mitigation) . . . 221,175.00 - $32,987.54 = $188,187.46 (total back pay)

is drawn shall have applicable interest calculated at the federal interest rate[,]" the instant case is distinguishable. *Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 280 (2d Cir. 2010). Here, the Court will apply the New York prejudgment interest rate rather than the federal rate, as Plaintiff shall receive liquidated damages in addition to lost wages.  *Id.*, 629 F.3d at 280, n. 2 (citing *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007); *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 340–41 (S.D.N.Y.2005) (cases in which the New York prejudgment interest rate rather than the federal rate was applied, as the FLSA does not allow for any prejudgment interest where plaintiffs also receive liquidated damages)).  Accordingly, Mr. Brito is entitled to prejudgment interest on his back pay damages ($188,187.46), compounded annually at 9%, which amounts to $75,175.09.

### iii. Liquidated Damages on Back Pay

Plaintiffs seek liquidated damages under the FLSA. (ECF No. 49, p. 49.)  Plaintiffs may not seek prejudgment interest under the NYLL and liquidated damages under the FLSA, and accordingly, prejudgment interest may be awarded here under the NYLL but not under the FLSA. *See Thompson v. Jennings & Hartwell Fuel Oil Corp.*, No. 14-cv-1857 (RJD) (LB), 2015 WL 5437492, at *8 (E.D.N.Y. Aug. 27, 2015), *report and recommendation adopted*, No. 14-cv-1857 (RJD) (LB), 2015 WL

5444939 (E.D.N.Y. Sept. 15, 2015) (citing *Janus v. Regalis
Const., Inc.*, No. 11-CV-5788 (ARR)(VPP), 2012 WL 3878113, at *8
(E.D.N.Y. July 23, 2012) (citations omitted) *adopted by*, 2012 WL
3877963 (E.D.N.Y. Sept.4, 2012)("FLSA liquidated damages serve
as a form of prejudgment interest, and for that reason a
plaintiff who prevails on his FLSA claim and receives liquidated
damages may not also receive an award of interest.")
Accordingly, the Court will grant Plaintiff liquidated damages
under the NYLL. *See Nana v. Le Viking LLC*, No. 17-cv-928 (CM)
(OTW), 2019 WL 3244181, at *5 (S.D.N.Y. July 19, 2019), *report
and recommendation adopted* (Oct. 28, 2019) (citing *Brock v.
Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)
("[P]rejudgment interest may not be awarded where FLSA
liquidated damages are also awarded and thus only seeks
prejudgment interest under the NYLL.") The NYLL permits
liquidated damages in an amount up to $20,000 for retaliation
claims. *See* N.Y.L.L. § 215(2)(a).  Mr. Brito is awarded $20,000
as liquidated damages for his retaliation claims.

### iv. Front Pay

The court has the discretion to award front wages to a
prevailing plaintiff under the NYSHRL and the NYCHRL. *Becerril
v. E. Bronx NAACP Child Dev. Ctr.*, No. 08-cv-10283(PAC)(KNF),
2009 WL 2611950, at *3-4 (S.D.N.Y. Aug. 18, 2009), *report and
recommendation adopted sub nom. Becerril v. Ease Bronx NAACP*

73

*Child Dev. Ctr.*, No. 08 CIV. 10283 PACKNF, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009) "Front pay is an equitable remedy available to prevailing plaintiffs, and is generally understood to be an award for lost compensation for the period between judgment and reinstatement." *Antoine*, 489 F. Supp. 3d at 95. The Court finds that Mr. Brito is entitled to front pay for his retaliation and discrimination claims.

The award of front pay depends on three considerations, specifically, "(1) whether reinstatement is either impossible or impracticable; (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation." *Shannon*, 136 F. Supp. 2d at 233 (citing *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728-29 (2d Cir. 1984)). Turning to the first factor, reinstatement is impracticable, if not impossible. Plaintiffs abused, ridiculed, and humiliated Mr. Brito on the basis of his disability, and terminated him in retaliation. (Brito Decl. ¶¶ 25-48) Even if Mr. Brito could be reinstated, it would not be fair to expect him to return to work for Defendants. *See Whittlesey*, 742 F.2d at 728 (Court awards front pay in lieu of reinstatement because the animosity between the parties renders reinstatement impossible.); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 169 (2d Cir. 1998) (front pay when employer employee relationship was "irreparably damaged").

74

As to the second factor, "a prevailing plaintiff forfeits her right to ... front pay if she fails to mitigate damages by not using 'reasonable diligence in finding other suitable employment.'" *Antoine*, 489 F. Supp. 3d at 95 (citation omitted).  Mr. Brito was reasonably diligent and was able to obtain another job, though he was only able to secure a fraction of the hours he previously worked at Marina's Bakery. (Brito Decl. ¶¶ 50-52.)  Further, the COVID-19 pandemic resulted in Mr. Brito losing his replacement job and served as an obstacle to securing another one. (*Id*. ¶¶ 52-53.)  The Court takes judicial notice that the COVID-19 pandemic impacted job security and the restaurant industry in New York City, and does not hold Mr. Brito responsible for the effects of the pandemic. (*Id*. ¶ 53.)

As to the third factor, the Court finds that a calculation of front pay is not unduly speculative as it is based on applicable minimum wages and a diligent record of hours worked. (ECF No. 51-1, Plannet.)  Mr. Brito seeks three years of front pay as compensation for his discrimination and retaliation claims, which is reasonable and consistent with relief granted by courts in the Second Circuit. *See Gutierrez v Taxi Club Mgmt. Inc.*, No. 17-cv-532 (AMD) (VMS), 2018 WL 3432786, at *8 (E.D.N.Y. June 25, 2018) (three years front pay award is reasonable); *Osorio v. Source Enters., Inc.*, No. 05 Civ. 10029(JSR), 2007 WL 683985, at *6 (S.D.N.Y. Mar. 2, 2007) ("a

five year front pay award was not unduly speculative or

excessive."); *Chisolm v. Liberty Lines Transit Inc.*, No. 08 Civ.

7894 (GAY), 2013 WL 452408, at *9 (S.D.N.Y. Feb. 6, 2013) (five

years front pay is reasonable). Therefore, Mr. Brito seeks three

years of front pay in the amount of $178,875.00.  The Court

declines to grant this amount, as Plaintiffs use 159 weeks to

calculate the amount of front pay. Three years consist of 156

weeks, which the Court will apply, along with Mr. Brito's

average 75 hours per week of work and the current minimum wage

rate, $15.00 per hour.  The Court awards Mr. Brito $175,500 in

front pay.

### v. Emotional Distress

Along with back pay, courts have awarded additional

damages to employees who demonstrate that they suffered

emotional distress as the result of a retaliatory termination.

Here, Plaintiff seeks $40,000 in damages for emotional distress.

In the Second Circuit, emotional distress awards can

generally be grouped into three categories:

> "[Ga]rden-variety," "significant" and "egregious." In
> "garden variety" emotional distress claims, the
> evidence of mental suffering is generally limited to
> the testimony of the plaintiff, who describes his or
> her injury in vague or conclusory terms, without
> relating either the severity or consequences of the
> injury. Such claims typically lack extraordinary
> circumstances and are not supported by any medical
> corroboration. "Garden variety" emotional distress
> claims generally merit $30,000 to $125,000 awards.
> "Significant" emotional distress claims differ from

the garden-variety claims in that they are based on
more substantial harm or more offensive conduct, are
sometimes supported by medical testimony and evidence,
evidence of treatment by a healthcare professional
and/or medication, and testimony from other,
corroborating witnesses. Finally, "egregious"
emotional distress claims generally involve either
"outrageous or shocking" discriminatory conduct or a
significant impact on the physical health of the
plaintiff. In "significant" or "egregious" cases,
where there is typically evidence of debilitating and
permanent alterations in lifestyle, larger damage
awards may be warranted.

*Olsen v. Cty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009);

*see also Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-cv-6071

(SAS) (AJP), 2009 WL 289653, at *8 (S.D.N.Y. Jan. 30, 2009)

(recommending award, under the NYLL, of $5,000 per plaintiff on

retaliation claims, where plaintiffs alleged only that they were

"upset" and in "low spirits" after being terminated), *report and

recommendation adopted*, 2009 WL 513371 (Feb. 27, 2009); *see also

Perez v. Jasper Trading, Inc.*, No. 05-cv-1725 (ILG) (VVP), 2007

WL 4441062, at *10 (E.D.N.Y. Dec. 17, 2007) (adopting report and

recommendation, awarding up to $15,000 where defendant

threatened to report plaintiff to immigration authorities).

The Court recognizes that Mr. Brito suffered

discriminatory and retaliatory conduct at the hands of

Defendants, beyond a "garden variety" level, resulting in

emotional distress for which he should be compensated.  Here,

the discriminatory and retaliatory behavior also included

physical components, including Mr. Brito being subjected to

77

shouting in his ear to mock his hearing impairment and being
subjected to pain in his affected eye. (Brito Decl. ¶¶ 30, 39.)
As stated in Mr. Brito's sworn declaration, as a result of his
abuse by Defendants, he suffers from sleeplessness, extreme
anxiety, depression, stress, loss of appetite, and increased
difficulty in interacting with others. (*Id.* ¶¶ 54-62.) Mr. Brito
has lost significant weight due to his depression and loss of
appetite, and his distress has manifested in nausea and
vomiting. (*Id.* ¶¶ 59-61.) Mr. Brito has also suffered in his
personal and social relationships, including from his son, as a
result of becoming withdrawn following his mistreatment by
Defendants. (*Id.* ¶ 62.)  The Court awards Mr. Brito the
requested $40,000 emotional damages award.

### d. Punitive Damages

Plaintiff Brito seeks "a substantial punitive damages
award" due to the "egregious conduct to which Mr. Brito was
subjected" for the NYLL and NYHRL violations. (ECF No. 49, Def.
Mem., p. 52.)  Plaintiff Brito requests an award of $100,000 in
punitive damages. Punitive damages are discretionary and may be
awarded "to punish the defendant for his outrageous conduct and
to deter him and others like him from similar conduct in the
future." *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 404
(E.D.N.Y. 2013) (citing *Smith v. Wade*, 461 U.S. 30, 54, 103
S.Ct. 1625, 75 L.Ed.2d 632 (1983)).

As Plaintiffs note, punitive damages are appropriate under multiple relevant statutory provisions. The FLSA allows plaintiffs to be awarded "such legal or equitable relief as may be appropriate to effectuate the purposes" of the anti-retaliation provisions. 29 U.S.C. § 216(b); Fair Labor Standards Amendments of 1977, Pub. L. No. 95-151, 91 Stat. 1245 (1977).[16] Courts have held that compensatory damages for emotional distress and punitive damages are both appropriate remedies under Section 216(b). *See Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 111-112 (7th Cir.1990); *Sines v. Serv. Corp Int'l*, No. 03-CV5465, 2006 WL 3247663, at *1-3 (S.D.N.Y. Nov. 8, 2006) (finding that punitive damages are available under the FLSA). Moreover, under the NYSHRL, a prevailing party is entitled to punitive damages where defendants "engaged in intentional discrimination ... with malice or reckless indifference to [plaintiff's] [state] protected rights." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 384 (2d Cir. 2001). Under both the NYSHRL and the NYCHRL, punitive awards are uncapped. *See* NYSHRL § 297(9) (providing for punitive

---

[16] Though awards of punitive damages are inherently speculative and based on approximations, the Supreme Court has highlighted several factors for courts to consider in determining the reasonableness of punitive damages, including: "(1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases." *DeCurtis*, 2011 WL 4549412, at *5 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)).

damages "in cases of employment discrimination related to private employers"); 16 NYCHRL § 8-502(a).  A plaintiff is entitled to punitive damages under the NYCHRL where "the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Chauca v. Abraham*, 30 N.Y.3d 325, 329, 89 N.E.3d 475 (2017) (internal quotation marks and citation omitted).

        The Court agrees that Defendants demonstrated conduct that warrants punishment to "deter [them] and others like [them] from similar conduct in the future." *Solis*, 938 F. Supp. 2d at 404.  As stated in Mr. Brito's sworn declaration, Defendants' mistreatment of Mr. Brito included direct attacks on his protected characteristics.  Defendants refused to provide Mr. Brito with accommodations to ease the pain in his eye from the heat of the bakery ovens, and repeatedly ridiculed him with discriminatory statements and physical cruelty, mocking him for his disabilities. (*See* Compl. ¶¶ 82-110; Brito Decl. ¶¶ 27-48.) Defendants shouted into Mr. Brito's ear to belittle him for his hearing disability and openly disparaged him at work, calling him "blind and deaf," and publicly laughed at him for his hearing aid. (*See* Compl. ¶¶ 98-105; Brito Decl. ¶¶ 35-40.) The first and final time Mr. Brito complained about his mistreatment and Defendants' unlawful wage practices, Defendants immediately

terminated him in retaliation for his protected complaint. (Compl. ¶¶ 109-10; Brito Decl. ¶¶ 43-48); *see also Azkour v. Little Rest Twelve*, No. 10-CV-4132 (RJS), 2015 WL 631377, at *9 (S.D.N.Y. Feb. 12, 2015) (noting that to recover punitive damages for an FLSA retaliation claim, Plaintiff must show that Defendants knew or were recklessly indifferent that Plaintiff's termination violated federal [or state] law).  Defendants were made directly aware of their violative behavior, and fired Mr. Brito in response for his complaints.  Moreover, prior to abandoning the instant litigation, Defendants did not put forward any evidence indicating that they would be financially incapable of shouldering significant punitive damages.  *See Antoine*, 489 F. Supp. 3d at 101 (citing *Patterson v. Balsamico*, 440 F.3d 104, 121 (2d Cir. 2006) ("[N]o matter how egregious the underlying conduct, the court is required to consider the defendant's financial circumstances in determining an award of punitive damages.")

Defendants' conduct was clearly cruel and reprehensible and warrants a significant punitive damages award. Though the Court considers Defendants' conduct to be outrageous, the Court also takes into account comparable cases. *Cf. Greathouse v. JHS Sec. Inc.*, No. 11-cv-7845 (PAE), 2015 WL 7142850, at *8 (S.D.N.Y. Nov. 13, 2015), *report and recommendation adopted*, No. 11-cv-7845(PAE)(GWG), 2016 WL

4523855 (S.D.N.Y. Aug. 29, 2016) (awarding $10,000 in punitive damages where conduct "reprehensible[,]" which included plaintiff being threatened with a gun by his supervisor); *Perez*, 2007 WL 4441062, at *10 (awarding plaintiffs a range of $5,000 to $15,000 each in punitive damages where defendant reported plaintiffs to immigration authorities and interfered with their new employment). Throughout the course of his employment, Mr. Brito was made to suffer repeated instances of humiliation and instances physical discomfort and abuse. That Mr. Brito's disabilities were the bases of his mistreatment add an important context to the conduct of Defendants. Ultimately, the Court finds that imposing a punitive damage award of $100,000 is appropriate under the circumstances presented here.

### e. Attorney's Fees and Costs

Plaintiffs seek attorney's fees and costs on a one-third contingency basis of Plaintiffs' wage claims and Mr. Brito's discrimination and retaliation claims (not including punitive damages). (ECF No. 49, Pl. Mem., pp. 55-56.) Plaintiffs also request litigation costs of $9,855.78. (*Id.*) Under the FLSA, NYLL, NYSHRL, or NYCHRL, a prevailing plaintiff is entitled to recover reasonable attorneys' fees and costs. *See* FLSA § 216(b); NYLL § 198(1-a); NYSHRL § 297(10); NYCHRL § 8-502(g).

As Plaintiffs correctly point out, their requested contingency fee is consistent with the one-third contingency fee award that is standard in the Second Circuit. *See, e.g., Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third is "consistent with the norms" of the Second Circuit and collecting cases where one-third fee was awarded); *Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In support of their attorney's fees and costs requests, Plaintiffs' submit the signed declaration of Innessa M. Huot, Esq., a partner at the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm"), attorneys for Plaintiffs along with non-for-profit co-counsel TakeRoot Justice. (ECF No. 50, Huot Decl.) Plaintiffs' counsel was retained on a purely contingency fee basis, and as such, has advanced all the costs involved in the litigation. (Huot Decl. ¶ 29.)

The Second Circuit requires that attorneys' fee applications include contemporaneous time records showing the date the work was performed, "the hours expended, and the nature of the work done" for each attorney or paralegal working on the

83

matter. *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, No. 07-CV-2568(JG), 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012) (citations omitted).  Plaintiffs have included such time records as part of their instant application, which reflect work performed by both the Faruqi Firm and TakeRoot Justice.  (ECF No. 50-5, Time Records.)   As of the date of the filing of the instant motion, May 28, 2021, and as supported by contemporaneous time records, Plaintiffs' counsel billed 544.70 hours on this matter, amounting to $218,515 in fees.  (Huot ¶ 31; ECF No. 50-5, Time Records.)  The Court, having reviewed the time records provided, finds that Plaintiffs' counsel did not engage in any duplicative or unnecessary work. (*See* Huot Decl. ¶ 31; ECF No. 50-5, Ex. E, contemporaneous time records.)  Plaintiffs have also submitted a "firm resume" of the Faruqi Firm, including background on the firm and short biographies detailing the experience of the attorneys involved in the instant case. (ECF No. 50-4, Firm Resume.)  The Court notes that no such information was provided for the attorneys from TakeRoot Justice, though the Huot Declaration represents that the attorneys and paralegal from TakeRoot Justice are experienced and deserving of reasonable fees. (Huot Decl. ¶ 38); citing, *e.g.*, *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (citing *Blum v. Stenson*, 465 U.S. 886,

84

892-894 (1984)) ("It is well-established that civil rights attorneys not working for profit are entitled to fees that are comparable to those awarded to private attorneys with fee-paying clients.")).

The reasonableness of the requested fee can be assessed by applying the so-called "lodestar method" as a cross-reference. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). As represented by the Huot Declaration and supporting time records, of May 28, 2021, Plaintiffs' counsel billed 543.4 hours on this matter. (Huot Decl. ¶ 31; ECF No. 50-5, Ex. E (lodestar summary and contemporaneous time records.) Plaintiffs' requested fee (which they estimated at $264,993.94) represents a multiplier of 1.21 of Plaintiffs' counsel's lodestar. This multiplier is consistent with the lodestar multipliers regularly awarded by courts in the Second Circuit in applications for attorney's fees. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six."); *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar.") Moreover, Plaintiffs' lodestar is calculated based on the hourly rates that Plaintiffs' counsel charges in non-contingency fee arrangements. (Huot Decl. ¶ 37.)

For the foregoing reasons, the Court finds Plaintiffs'
requested one-third contingency fees to be reasonable, and
awards Plaintiffs one-third of Plaintiffs' wage claims and Mr.
Brito's discrimination and retaliation claims (not including
punitive damages). The Court awards Plaintiffs $400.00 in costs,
representing the costs of court filing fees, which is reflected
in the docket for this case, and of which the Court takes
judicial notice. (Dkt. Entry, Feb. 12, 2019.)  The Court denies
the remainder of Plaintiffs' counsel's request for costs, as
their evidentiary support (*see* ECF No. 50, Huot Decl., ¶42,
"expense records summary") for litigation costs is lacking.  The
Court declines to accept Plaintiffs' conclusory calculation of
litigation costs, as it is wholly unsupported by actual
receipts, dates of payments, or any other available information
to assist in the Court's determination of the reasonableness of
such fees.

### f. Post-Judgment Interest

The Court will award post-judgment interest to
Plaintiffs, as Plaintiffs are entitled to post-judgment interest
on all civil money awards as a matter of right in federal court.
*See Tacuri v. Nithin Constr. Co.*, No. 14 Civ. 2908(CBA)(RER),
2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (awarding
plaintiffs post-judgment interest, despite their failure to
request post-judgment interest, on all sums awarded concerning

their FLSA and NYLL wage-and-hours claims). Pursuant to 28 U.S.C. § 1961, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (internal quotation marks and citation omitted). As such, post-judgment interest shall accrue at the federal statutory rate until the judgment is paid in full. 28 U.S.C. § 1961.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for default judgment is GRANTED. The Clerk of Court is directed to enter judgment, jointly and severally, against defendants Marina's Bakery, Margarito Gonzalez, and Sergio Gonzalez, and close the case.  The Court awards the following damages:

   1) a total of $67,321.86 in actual economic damages;

   2) $38,760.00 in damages for late payment of wages;

   3) $30,000 in statutory damages for wage notice and wage statement violations;

   4) liquidated damages of $67,321.86;

   5) prejudgment interest on actual unpaid wages, a total of $31,778.4;

For the avoidance of doubt, each Plaintiff is awarded wage related damages as reflected in the below table, for a combined total of **$235,182.12:**

| Damages Category | Brito | Bonilla | Cardona |
|---|---|---|---|
| Unpaid Wages (reflecting total minimum wages, overtime wages, and spread of hours wages owed) | $28,738.35 | $20,999.00 | $17,584.51 |
| Wage Statement and Notice Violations | $10,000.00 | $10,000.00 | $10,000.00 |
| Late Wages | $13,000.00 | $14,560.00 | $11,200.00 |
| Liquidated Wages | $28,738.35 | $20,999.00 | $17,584.51 |
| Prejudgment Interest on Unpaid Wages | $11,447.12 | $10,800.96 | $9,530.32 |
| Total Wage Related Damages per Plaintiff | $91,923.82 | $77,358.96 | $65,899.34 |
| Total Wage Related Damages | **$235,182.12** | | |

6) Mr. Brito is further awarded total back pay damages in the amount of **$188,187.46;**

7) Mr. Brito is entitled to prejudgment interest on his back pay damages ($188,187.46), compounded annually at 9%, which amounts to **$75,175.09;**

8) Mr. Brito is awarded **$20,000** as liquidated damages for his retaliation claims;

9) Mr. Brito is awarded **$175,500** in front pay;

10) Mr. Brito is awarded a punitive damage award of **$100,000;**

11) Mr. Brito is awarded **$40,000** in emotional damages;

12) Plaintiffs are awarded as attorney's fees one-third of Plaintiffs' wage claims and Mr. Brito's discrimination and retaliation claims (not including punitive damages);

13) Plaintiffs are awarded **$400.00** in litigation costs; and,

14) Plaintiffs are granted post-judgment interest on all money awards herein, to accrue at the federal statutory rate, until the judgment is paid in full.

Plaintiffs are ordered to serve a copy of this Order and the forthcoming Judgment on Defendants and note such service on the docket.

**SO ORDERED.**

Dated:    Brooklyn, New York
          March 24, 2022

_____
          /s/
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

89